Argued October 4, affirmed November 28, 1922, rehearing denied January 9, 1923.

## BOBELL *v.* WAGENAAR.

(210 Pac. 711.)

**Insane Persons—Service of Summons Held to Confer Jurisdiction, Where Defendant not Judicially Declared Insane.**

1. In an action in ejectment, where the defense was that prior to the action two actions at law were commenced against plaintiff and prosecuted to judgment, the property described in complaint sold under execution, the sales confirmed, and sheriffs' deeds conveying the premises to defendant's grantors executed and delivered, and that by mesne conveyance title to the premises passed and was vested in defendant's intestate, the contention of the plaintiff that the court acquired no jurisdiction in such cases by service of summons on him personally in county where action brought because he was insane at the time and no guardian had been appointed, or had appeared for him in either of the actions, where it did not appear that he had theretofore been judicially determined to be of unsound mind or incapable of conducting his own affairs, or that a guardian had been appointed for him necessitating service of summons, together with copy of the complaint, upon him in person and upon his guardian, under Section 55, subdivision 4, Or. L., was without merit.

Insane Persons—Law Providing Guardian ad Litem for Incompetent Defendant Prescribes Procedure Only on Trial.

2. Section 33—1, Or. L., providing that, where an insane or idiotic person is a party to any action, suit, or proceeding, and has no guardian, or if in the opinion of the court his guardian is an improper or incompetent person, and that some suitable person to act as guardian *ad litem* should be appointed, has no reference to the manner in which service shall be made upon an insane person, nor does it attempt to limit the court's jurisdiction over the person of such insane party, but only prescribes the procedure to be followed upon the trial of the cause.

Insane Persons—Judgment not Void Where Court Refused Guardian ad Litem.

3. That court failed or refused to appoint a guardian *ad litem* to defend for an insane person did not deprive it of jurisdiction of his person or subject matter so as to render default judgment void and subject to collateral attack; his remedy being to appeal or commence suit to set aside and vacate the judgments.

Insane Persons—Evidence Held Insufficient to Show Defendant Insane When Served With Summons.

4. Where, in action for money judgments, the fact that defendant in his reply alleged that he was insane at the time of service of summons upon him, and evidence tending to show that he was drinking heavily and neglected his business, *held* insufficient to establish his insanity.

Execution—Order Confirming Execution Sale Conclusive Determination of Regularity.

5. Under Section 241, subdivision 4, Or. L., providing that an order confirming sale shall be a conclusive determination of the regularity of proceedings determining such sale, as to all persons, in any other action, suit, or proceeding whatever, irregularities in attachment proceedings in actions against plaintiff, urged as a defense in his action in ejectment, would not affect the validity of a subsequent sale under execution.

Execution—Order of Confirmation of Court Having Jurisdiction Binding Until Reversed or Annulled.

6. In an action in ejectment, where the defense was that prior to the action judgments were recovered against plaintiff, and the land in controversy sold under execution, the sales confirmed, and sheriffs' deeds, conveying premises to defendant's grantors, executed and delivered, and that by mesne conveyance title to the premises passed and was vested in defendant's estate, such sales were not invalid for the reason that the return of the sheriff of the sales under execution was filed and the orders confirming the sales were made on the same day, under the rule that the decision of a court of competent jurisdiction, having jurisdiction of the parties and the subject matter of the suit or action, however erroneous it may have been, is binding upon the parties until reversed or annulled in some proper proceeding.

**Landlord and Tenant—Tenant not Estopped from Asserting That Landlord's Title has Passed Since Commencement of Relation.**

7. Under Section 798, subdivision 5, Or. L., providing that a tenant is not permitted to deny the title of his landlord at the time of the commencement of the relation, while a tenant is precluded from denying the title of the landlord at such time, he is not estopped, nor does the statute preclude him, from asserting that the title which the landlord had at the time of the commencement of the relation has since passed, either by the landlord's own voluntary conveyance of the premises or by operation of law.

**Ejectment—Plaintiff must Recover on Strength of Own Title.**

8. In an action in ejectment, if plaintiff recovers at all, he must recover on the strength of his own title, and not on the weakness of his adversary's title.

From Lincoln: GEORGE F. SKIPWORTH, Judge.

Department 1.

This is an action in ejectment against the defendant as administrator of the estate of C. H. Dennis, deceased, to recover the possession of certain real property in Lincoln County, Oregon, with damages for withholding the possession thereof.

The complaint alleges that the plaintiff is the owner in fee and entitled to the immediate possession of the property. The answer denies the allegations of the complaint, and alleges that two actions at law were commenced against the plaintiff and prosecuted to judgment; that executions were issued thereon and the property mentioned in the complaint was sold under said executions; that the sales were confirmed and that sheriffs' deeds conveying said premises to defendant's grantors were executed and delivered and that by mesne conveyances the title to the premises passed to and became vested in the defendant's intestate.    AFFIRMED.    REHEARING DENIED.

7. Estoppel of tenant to show conveyance of premises by landlord during tenancy, see note in **Ann. Cas.** 1912C, 349.

For appellant there was a brief and oral argument by *Mr. Harry G. Hoy.*

For respondent there was a brief over the names of *Mr. G. E. Hamaker* and *Mr. J. F. Shelton,* with an oral argument by *Mr. Hamaker.*

RAND, J.—1. Plaintiff's first contention is that the court had no jurisdiction to give judgment against him in either of said actions for the reason that he was insane at the time and no guardian had been appointed or appeared for him in either of said actions. This contention cannot be sustained. In both of these actions the relief sought was the recovery of a money judgment only and service of the summons and complaint was made upon the plaintiff herein in person in the county where the actions had been commenced. The court, because of such personal service upon the defendant, had full and complete jurisdiction to hear and determine said actions. If plaintiff, the defendant in said actions, had been theretofore judicially declared to be of unsound mind or incapable of conducting his own affairs, and a guardian had been appointed for him, then the court, because of the provisions of subdivision 4, Section 55, Or. L., could not have acquired jurisdiction over his person by service of summons and complaint on him alone, as in such case the statute requires that "the summons shall be served by delivering a copy thereof, together with a copy of the complaint * * to such guardian and to the defendant personally." In this state there is no statute except the above that prescribes the manner in which service of summons and complaint shall be made upon insane persons, and except where a guardian for an insane

person has been appointed as so prescribed, insane persons may be sued and jurisdiction over their persons be acquired by the same process as if they were sane. Hence, the court, having acquired full and complete jurisdiction over his person and over the subject matter of the actions, had authority to render said judgments, whether he was sane or insane at the time the actions were commenced and the judgments rendered.

2. However, when an insane or idiotic person is a party to any action, suit or proceeding in the courts of this state, Section 33—1, Or. L., provides that if he has no guardian or, in the opinion of the court, his guardian is an improper or incompetent person, the court shall appoint some suitable person to act as guardian *ad litem*. But this latter statute has no reference to the manner in which service shall be made upon an insane person nor does it attempt to limit the court's jurisdiction over the person of such insane party. It only prescribes the procedure to be followed upon the trial of the cause.

3. The judgments complained of were default judgments and it was not made to appear to the court that the party defendant to said actions was insane, but even if it had been disclosed to the court that the defendant was an insane party and the court had failed or refused to appoint a guardian *ad litem* to defend for him, this would not have deprived the court of its jurisdiction over his person or over the subject matter of the action and such failure would have been a mere irregularity rendering the judgment voidable but not void. Plaintiff's remedy in such a case would be to appeal or to commence a suit to set aside and vacate the judgments. If he had pursued either of these remedies, upon a sufficient

showing that he was insane, he could have obtained relief, except that in a suit in equity to set aside or vacate the judgments, it would have been necessary for him to show, not only that he was insane, but also that he had a defense to the actions. In this action, however, the plaintiff cannot raise the question of his insanity because this is a mere collateral attack upon the judgment and is not a direct attack brought to set aside or vacate the judgments. Hence, if on account of his alleged insanity the plaintiff is entitled to legal relief he must pursue his remedy by some appropriate action in the original actions or by some direct attack to set aside the judgments. He cannot, in a collateral proceeding, attack either the regularity or validity of these judgments or of the proceedings had in satisfaction thereof.

"As a general rule," said this court in *Harper* v. *Harding*, 3 Or. 361, "a judgment or decree of a court having jurisdiction cannot be attacked collaterally; and when a decree is attacked for want of jurisdiction, it is not a sufficient showing of such lack, to declare that the defendant was insane at the time." See also *Haines* v. *West*, 101 Tex. 226 (105 S. W. 1118, 130 Am. St. Rep. 839); *King* v. *Robinson*, 33 Me. 114 (54 Am. Dec. 614); *Maloney* v. *Dewey*, 127 Ill. 395 (19 N. E. 848, 11 Am. St. Rep. 131); *Johnson* v. *Pomeroy*, 31 Ohio St. 247; 22 Cyc. 1245; 14 R. C. L. 615. Again, in *Tustin* v. *Gaunt*, 4 Or. 309, the court quoted with approval from 2 How. (U. S.) 341 (11 L. Ed. 283), as follows: "A court which is competent, by its constitution, to decide on its own jurisdiction, and to exercise it to a final judgment, without setting forth in their proceedings the facts and evidence on which it is rendered, whose record is absolute verity, not to be impugned by averment, or proof to the

contrary, is of the first description; there can be no
judicial inspection behind the judgment save by ap-
pellate power.'' And then said, ''When, however, the
record of a court of general jurisdiction comes in
question, a want of jurisdiction cannot be shown by
evidence *aliunde* the record, and 'no facts or circum-
stances which do not appear upon the face of what
constitutes the record,' designated in our Code as
the judgment-roll, can be used for such purpose, for
the reason that 'the record of a court of superior
jurisdiction imports absolute verity, and cannot,
therefore, be collaterally impeached from without.'
*Hahn* v. *Kelly,* 34 Cal. 402.'' The court then defined
what constitutes a want of jurisdiction, as follows:
''A want of jurisdiction appears upon the face of the
record 'whenever what was done is stated in the
record, and which, having been done, is not sufficient
in law to give the court jurisdiction.' ''

In *Morrill* v. *Morrill,* 20 Or. 96, 103 (25 Pac. 362,
23 Am. St. Rep. 95, 11 L. R. A. 155), this court said:
''It is said to be an axiom of the law, that when a
court has jurisdiction of the subject matter and the
parties, its judgments cannot be impeached collater-
ally for errors of law or irregularity in practice.''
In that case the court defined a collateral attack as
follows: ''A collateral attack on a judgment is any
proceeding which is not instituted for the express
purpose of annulling, correcting or modifying such
decree: 12 Am. & Eng. Ency. of Law, 177.''

4. We have proceeded thus far upon the theory that
the plaintiff herein, the defendant in said actions,
was insane, but after a careful examination of the
record we find that there is no evidence whatever
tending to show that he was insane. The only alle-
gation that plaintiff was insane is contained in the

reply, and as all new matter alleged in the reply is deemed denied under the statute, the burden of proof was on the plaintiff. There was some evidence tending to show that during the time referred to he was drinking heavily and was neglecting his business, but this is wholly insufficient to establish insanity. After considering all of the evidence in the case we are satisfied that the plaintiff is not now and never has been insane.

5. Plaintiff contends that because of certain alleged irregularities in the proceedings of the attachment had in the action brought by Allen & Lewis, a corporation, against the plaintiff herein, in which action the real property in question was sold under execution, the sale thereunder was invalid. After the property was sold under execution and the sale thereof was confirmed by order of the court, any irregularity in the attachment at the commencement of the action could not affect the validity of the subsequent sale of the property under execution so far as the rights of the plaintiff in the property are concerned. The Code provides: "An order confirming a sale shall be a conclusive determination of the regularity of the proceedings concerning such sale, as to all persons, in any other action, suit or proceeding whatever." Section 241, subd. 4, Or. L. So even if this had been a direct attack the statute would be conclusive upon this question.

6. Plaintiff also contends that because the return of the sheriff of the sales under execution was filed and orders confirming the sales were made on the same day, the orders of confirmation are each invalid. If, instead of being a mere collateral attack, this was a direct proceeding to vacate and set aside these orders and had been seasonably made, plain-

tiff's contention would be entitled to consideration. But as the court had jurisdiction of the parties and of the subject matter of the controversy, these orders are not void when attacked collaterally. If the court acted prematurely or was mistaken upon either the law or the facts, yet it had jurisdiction to make the order, and therefore the order is valid and binding until it is set aside upon appeal or is corrected, modified or annulled in a direct proceeding brought for that purpose. A decision of a court of competent jurisdiction having jurisdiction of the parties and of the subject matter of the suit or action, "however erroneous it may have been, is binding upon the parties until reversed or annulled in some proper proceeding." *Morrill* v. *Morrill, supra.*

As said in *McRae* v. *Daviner,* 8 Or. 63, which was a direct and not a collateral attack upon a sheriff's sale under execution: "Appellant had three remedies: the right to appear and file objections to the order of confirmation of the sale, the right of appeal, and the right of redemption, all of which he has neglected and failed to avail himself of."

A written stipulation was filed in the lower court in which the parties to this action stipulated that on the twenty-eighth day of July, 1916, the plaintiff was the owner in fee of the real property described in the complaint, and that if the plaintiff has lost the title thereto, it is by virtue of the execution sales mentioned in defendant's answer, or one of them. It was also stipulated that some time prior to July 29, 1916, defendant's intestate went into possession of the property as a tenant of the plaintiff and remained in possession thereof until his death; that no definite term of lease was ever agreed upon, but that the rent was paid to plaintiff monthly up to and

including the month of February, 1917. It appears from the receipts offered in evidence that defendant's intestate paid to plaintiff the rental for said premises up to and including the month of November, 1917.

It appears from the evidence that Allen & Lewis, a corporation, on November 27, 1915, commenced an action against the plaintiff herein in the Circuit Court for Lincoln County, and later recovered judgment in said action; that an execution was issued and the property sold to satisfy said judgment on July 29, 1916; that Allen & Lewis were the purchasers at said sale. It also appears that on February 10, 1917, Allen & Lewis quitclaimed said property to defendant's intestate, and on December 29, 1918, assigned to him the sheriff's certificate of sale, and that a sheriff's deed to said premises was delivered to defendant's intestate on December 31, 1918.

7. Plaintiff contends that as defendant's intestate went into possession of the property as a tenant of the plaintiff and remained in possession until the time of his death and failed to surrender possession thereof to the plaintiff, defendant is estopped to deny plaintiff's title notwithstanding that the property was sold under execution to Allen & Lewis, and that the title thereto has passed by mesne conveyances from Allen & Lewis to defendant's intestate. In support of his contention, plaintiff cites subdivision 5, Section 798, Or. L., which reads as follows: "A tenant is not permitted to deny the title of his landlord at the time of the commencement of the relation."

Under the statute the tenant is precluded from denying the title of the landlord at the time the relation of landlord and tenant commenced. But he is not estopped, nor does the statute preclude him from

106 Or.—16

asserting that the title which the landlord had at the time of the commencement of the relation has since passed, either by the landlord's own voluntary conveyance of the premises, or by operation of law. A tenant is estopped to deny his landlord's title "so long as he holds under that title, which is until the landlord is divested of his title by his own act or by operation of law." Note, 6 Am. St. Rep. 557. See *Camp* v. *Camp,* 5 Conn. 291 (13 Am. Dec. 68–72).

In *McAusland* v. *Pundt,* 1 Neb. 211 (93 Am. Dec. 358), the court said: "It is well settled that a tenant is not estopped from showing that the interest of the lessor has passed from him by his own conveyance or by sale under judgment against him: Bingham on Real Estate, 210; the tenant himself may become purchaser at such judicial sale: *Despard* v. *Walbridge,* 15 N. Y. 377." In the same case, the court, in considering the rule of estoppel, said: "This rule, however, must be confined to the title of the landlord or person contracting to sell, had at the time such possession is given. Subsequently to making the lease or contract of sale, the lessor or vendor might sell the premises. In that case, I see nothing to forbid the tenant or vendee in possession from recognizing or treating with him, to whom the vendor or landlord had sold. What the vendor could himself voluntarily do, the law can as effectually accomplish in cases falling within its authority."

"It is well settled," says Mr. Bigelow, "that a tenant in possession cannot, even after the expiration of his lease, deny his landlord's title without (1) actually and openly surrendering possession to him, or (2) being evicted by title paramount, or attorning thereto, or (3) at least giving notice to his landlord that he shall claim under another and a valid title."

Bigelow on Estoppel (6 ed.), p. 562. But, says the same author, at page 561, ''The tenant, again, may purchase the property from the landlord, and set up the title thus acquired against him. In the case first cited, an action of covenant for rent, the defendant offered to show that he had become the purchaser at execution sale of the reversion of a portion of the demised premises, and the Supreme Court held the evidence admissible in mitigation of damages. And it was said that if the purchase had covered the entire reversionary interest of the landlord, the fact could have been alleged, and would have constituted a perfect bar to the action. Mr. Justice COWEN, speaking for the court, said that the tenant could not deny that the landlord had a right to demise at the time the lease was given; nor could he defend on the ground that he had acquired an outstanding title adverse to that of the landlord. But this was the extent of the doctrine. If the landlord parted with his title pending the lease, the tenant would be bound to pay rent to the assignee; and should the tenant then buy in the assignee's right, the lease would be extinguished. And the result would be the same if the landlord should sell and release to the lessee. No action would lie for rent in these cases. And, therefore, had there been a sheriff's sale of the whole reversion, and had the defendant redeemed or purchased under the judgment, no action could have been sustained; for a purchase or acquisition of title under a judgment against the lessor was the same thing as if the lessor had granted by deed.

''But the lessor may transfer his reversion to another, thereby giving to such other the right to the rent as well as to the possession, and the lessee may show, as against a claim for rent or possession by

the lessor, that the latter, having transferred the reversion, is no longer entitled to assert such claim. Were this not the case, the lessee, or person claiming under him, might be liable to separate suits for possession, or for rent, by both the original lessor and by a transferee of the latter, and be without any defense to either, since, as we have seen, the transferee of the lessor is entitled to the benefit of any rule of preclusion or estoppel to the same extent as the lessor himself." 1 Tiffany on Landlord and Tenant, p. 493.

"The landlord may not have any interest in the title to the demised premises, but whether he has or not cannot be questioned by the tenant before the expiration of his lease, and whilst in possession under it, unless based upon some distinct and independent claim to the land. *Bowdish* v. *Dubuque,* 38 Iowa, 341." *Beck* v. *Minnesota & Western Grain Co.,* 131 Iowa, 62 (107 N. W. 1032, 7 L. R. A. (N. S.) 930).

8. Plaintiff's contention is that although the plaintiff has lost all title to the premises in controversy, and defendant's intestate has acquired full and complete title thereto, nevertheless the defendant is now estopped to deny plaintiff's title for the reason that defendant's intestate failed to surrender possession of the premises to the plaintiff. This is an action in ejectment, and if plaintiff recovers at all he must recover on the strength of his own title and not on the weakness of his adversary's title. But regardless of this, there is no merit in plaintiff's contention. The law does not prohibit a tenant from acquiring title to the demised premises, either by voluntary conveyance or judicial sale, and there is no more reason for holding that the tenant should be required to

surrender possession before asserting his own title in the one case than in the other. Where real property in the possession of a tenant is conveyed by a landlord to a third party, the tenant, unless his lease so provides, is not required to surrender possession of the demised premises to the original landlord, but he may remain in possession under the lease upon paying the rental to the new landlord. The same rule applies where the title to the property of the landlord has become vested in a third party by judicial sale. So if the tenant himself, instead of a third party, acquires the title to the property which his landlord had at the time of the demise, whether he acquires the same by voluntary conveyance from the landlord or by purchase at execution sale, the tenant is not required to surrender the possession of the demised premises to his former landlord before becoming entitled to claim the property as his own. When, under a voluntary conveyance from his landlord or by operation of law, a tenant has acquired his landlord's title to the demised premises, the relation previously existing between them of necessity is terminated at once and the lease is at an end. Upon the tenant's acquisition of the title that his landlord had at the time of the demise, the rights of the former landlord against the tenant are extinguished, and the duties of the tenant to the landlord are discharged. By such acquisition of title the lesser estate of the tenant in the property has become merged in the greater estate acquired by the tenant when he became the owner of the land.

A tenant is estopped to deny the title that the landlord had to the premises at the time of the demise, whether such title was at the time a good or a defective title, and this estoppel continues in force as long

as the tenant remains in possession of the demised premises under the lease or holds under that title, but when the landlord is divested of his title by his own act or by operation of law, the estoppel is at an end, and if the tenant himself acquires the title that the landlord had at the commencement of the relation, he is neither estopped to deny the landlord's title nor does the law compel him to surrender possession of the premises before claiming title thereto in himself.

Finding no error in the record, the judgment of the lower court will be affirmed, and it is so ordered.

AFFIRMED. REHEARING DENIED.

BURNETT, C. J., and McBRIDE and HARRIS, JJ., concur.