Argued December 14; reversed December 30, 1943

IN RE WOODWARD'S GUARDIANSHIP
REYNOLDS ET AL. *v.* UNITED STATES
NATIONAL BANK
(144 P. (2d) 490)

Before BAILEY, Chief Justice, and ROSSMAN, KELLY, LUSK and BRAND, Associate Justices.

*Wilber Henderson,* of Portland (Platt, Henderson, Warner, Cram & Dickinson, of Portland, on the brief) for appellant.

*Junius N. Ohmart,* of Portland, for Judith Arabella Woodward.

KELLY, J. On the 23rd day of June, 1942, Judith Arabella Woodward, while confined as a patient in the Oregon State Hospital for the insane, signed and verified a petition to the effect that Joseph W. Reynolds, at the request of said petitioner, filed with the United States National Bank of Portland, Oregon, the duly appointed, qualified and acting guardian of said petitioner's estate, an itemized, verified claim for services as a Christian Science practitioner amounting to $480.00 for payment, out of funds of said petitioner's estate, covering Christian Science treatments and services rendered during various periods of time between November 17, 1929, and September 15, 1932, which services ended some two years prior to said petitioner's commitment in 1934 to the Oregon State Hospital.

Said petition contains a request that the court order the claim aforesaid to be paid by said guardian "regardless of the guardian's objection that said obligation is outlawed."

We quote from the petition the statement therein concerning the claim of Mrs. Lucy Hays Reynolds:

"Your petitioner further respectfully represents to the court, that prior to the death of her mother, Judith C. Woodward, in January, 1942, she was co-guardian with the aforesaid United States National Bank to the time of her death, and that your petitioner's mother, at the request of your petitioner, employed Mrs. Lucy Hays Reynolds, Christian Science Practitioner, who rendered Christian Science treatments and services for your petitioner, your petitioner's mother paying said practitioner's charges out of her own funds. That your petitioner has made known to her attorney, Junius V. Ohmart,

her desire and has requested said guardian that she be permitted to receive continued Christian Science treatments, as previously rendered by Mrs. Reynolds; and that same be paid for out of her funds, including the services rendered by Mrs. Reynolds since January 1, 1942, not to exceed Thirty Dollars ($30.00) per month, which is to include the expense of said practitioner for her monthly trips to Salem to see and confer with your petitioner; that said services may continue as your petitioner may require and until the further order of the court."

■ It will be noted that there is no allegation as to the extent of the services by Mrs. Reynolds since January 1, 1942. There is no testimony on that point. It is true that after Mr. Ohmart left the witness stand and while discussing the case with the court, he made a statement to the effect that the services had continued each month beginning with January, 1942, until the date of the hearing, namely, June 29, 1942. We cannot regard this as testimony. No claim has been presented either to the guardian or the court by Mrs. Reynolds. As we view the record, Mrs. Reynolds' cause is not supported by any claim, by the petition, or by the testimony adduced before the court. As to Mrs. Reynolds, the petition of Miss Woodward is merely a declaration that she desires the court to make an order that she be permitted to receive treatments by Mrs. Reynolds and that Mrs. Reynolds be paid therefor from the funds of the guardianship estate.

We are confronted herein by several interesting questions:

First, the question arises as to whether Miss Woodward was insane when she signed the petition. In that regard, it appears that in 1934, she was declared to be insane and committed to the Oregon State Hospital

for the Insane and ever since has been confined therein as a patient. The only testimony tending to rebut the presumption that she has been insane at all times while so confined is that of Mr. Joseph W. Reynolds one of the claimants herein.

The following question was propounded to Mr. Reynolds and he gave the following answer thereto:

"Q. Now, in these various talks that you have had with her here in the last two or three years, what is your opinion of her mental condition?

"A. Miss Woodward is a very alert, keen person. She is very mentally sensitive, but in talking with her, you wouldn't think that she was insane at all, and in going to the notes I made in my report of my last visit there, when I talked with her, at least the points upon which you would get an impression, from that point she has very ultra sensitive thoughts, and that is my concept of her mentality."

In a letter written by Mr. Reynolds to the guardian bank, dated March 18, 1942, Mr. Reynolds states concerning Miss Woodward:

"In many ways she seems normal and alert, except that she has a notion that she cannot walk, and that it is a sin for her to eat heavily, hence much of the time she eats very lightly."

Mr. Junius V. Ohmart, the attorney who prepared the petition herein for Miss Woodward, expressed no opinion as to her mental state while testifying as a witness; but, in a colloquy with the court and opposing counsel, Mr. Ohmart stated in answer to a question by the court:

"Her condition is mostly physical. Mentally speaking, she appears to me to seem quite normal. She has little temperamental spells once in a while; but mentally speaking, it is due to her delusions about her food, and so forth."

■ In answer taken over objection of the guardian and subject to such objection Mr. Ohmart stated *inter alia*:

"I told Mr. MacKay she [Miss Woodward] wanted to see a representative of the bank, and Mr. MacKay did send Mr. Eyre, one of their representatives of the bank, to see her in regard to his claim and other matters, and I understand from Mr. MacKay that he made a favorable report back to him as to her mental condition, that she was a woman above the average intelligence, and had authorized— she had authorized payment of this claim."

It is unnecessary to say that this last quoted statement by Mr. Ohmart, insofar as it bears upon Miss Woodward's mental state, was incompetent as pure hearsay.

■ We are of the opinion that the presumption of insanity arising from the order declaring her to be insane and from her subsequent confinement in the hospital for insane was not overcome by the testimony before us in the matter under consideration.

We think, therefore, that in order to present the matter set forth in her petition, a guardian *ad litem* should have been appointed.

■ We are not unmindful of the decisions of this court holding that the failure to have a guardian appointed for a party litigant is an irregularity and not such a fatal defect as to nullify the orders of the court. *Bobell v. Wagenaar,* 106 Or. 232, 210 P. 711; *Round v. State Industrial Accident Commission,* 154 Or. 400, 60 P. (2d) 601. In the case of *Bobell v. Wagenaar, supra,* it appears from the opinion that plaintiff was not and never had been insane. The instant proceeding differs also from *Bobell v. Wagenaar, supra,* in that this proceeding is not a collateral attack upon a judgment as in

the Bobell-Wagenaar case. In *Round v. State Industrial Accident Commission,* supra, the plaintiff was not confined in the hospital for the insane when the circumstances occurred upon which his claim for compensation arose or when the case was tried upon appeal to the circuit court from the order of the commission.

The verified claim, however, of Mr. Joseph W. Reynolds is in this record, and while upon statutory provisions, differing from ours, it has been held that the probate court could not hear and determine the validity of a claim against a guardianship estate when such claim had been incurred before the appointment of a guardian, the record before us renders it unnecessary to pass upon that question in this proceeding.

Unless effect be given to an oral agreement to postpone the due date of the claim of Joseph W. Reynolds, such claim was barred by the statute of limitations. The services were alleged to have been rendered between November 17, 1929, and September 15, 1932. The claim was presented to the guardian on March 1, 1942. Thus it will be noted that more than six years had elapsed subsequent to the performance of the services and prior to the presentation of the claim.

To meet the guardian's defense that this claim is barred by the statute of limitations, it is alleged that:

"Said account was not paid when your petitioner contracted the same because of lack of funds, but your petitioner intended that same be paid when your petitioner came into possession of a trust estate bequeathed to her, which was agreeable to Mr. Reynolds."

Mr. Reynolds testified that an oral agreement was made by Miss Woodward and himself that the time of

payment for his services should be postponed until. Miss Woodward would come into her estate.

Without burdening this opinion with details, we feel warranted in holding that the record shows that Miss Woodward did not obtain and could not have obtained possession of her estate until May, 1938. The oral agreement to postpone the date of payment to Mr. Reynolds' account was made not later than September 15, 1932.

We quote from the testimony of Mr. Ohmart:

"* * * I represented that to the bank because she [Miss Woodward] was insisting upon its [Mr. Reynolds' claim] being paid—that it should be paid, and the bank raised the question about its being outlawed; at that time the outlaw point came up and they claimed that it was outlawed in six years. When I discovered that there was this agreement that it should not be paid and would not be paid until she got possession of her estate, which was in May of 1938, based upon that agreement between the two, I saw then that it did not accrue until May, 1938, and it would not outlaw then until May 1944."

■ Such an oral agreement is void, it being an agreement that by its terms is not to be performed within a year from the making thereof. Section 2-909, Subdiv. 1, Vol. 1, O. C. L. A., p. 337; *Brown v. Austin*, 102 Or. 53, 201 P. 543; 27 C. J., Frauds, Statute of, p. 185, Sec. 109; 37 C. J. S., Frauds, Statute of, p. 565, Sec. 60.

■ Being void, we cannot give it the effect of postponing the due date of Mr. Reynolds' claim, and, hence, we are constrained to hold that claim to have been barred by the statute of limitations.

■ Counsel for Miss Woodward calls attention to the privilege not granted by the contract by virtue of which Miss Woodward might pay this claim at any time be-

fore May, 1938. If payment had been made before the date of maturity fixed by a valid contract, such payment would have been a payment in advance of the legal liability to pay and nothing more. *Pagal v. Nickel,* 107 Wis. 471, 83 N. W. 767; *Mattison v. Marks,* 31 Mich. 421, 18 Am. Rep. 197; *Wilson v. Bicknell,* 170 Mass. 259, 49 N. E. 113.

■ The oral contract, if valid, was such as to prevent Mr. Reynolds from maintaining an action or suit or other proceeding to enforce it at any time prior to May, 1938. If it did not have the effect of preventing an action, suit or other proceeding for its enforcement at any time prior to May, 1938, then the statute of limitations had barred the claim notwithstanding such agreement. If, on the other hand, the contract would have had the effect, if valid, of preventing Mr. Reynolds from enforcing it until May, 1938, it is obvious that such contract could not be performed within one year from its execution in September, 1932. To render such a contract valid, it must be in writing, expressing the consideration, and subscribed by the party to be charged or by his lawfully authorized agent.

As to the claim of Lucy Hays Reynolds, we hold that it has not been presented, was not pleaded in Miss Woodward's petition in such a way as to present the issue whether it is an existing claim, or if so, in what amount, nor is it proved by any testimony.

■ As to the direction to the guardian to employ Mrs. Reynolds for future Christian Science treatment, we hold that the showing before us does not justify any such order. In this regard, if qualified, disinterested witnesses present a showing in a proceeding wherein Miss Woodward appears either by her general guardian

or by a duly appointed guardian *ad litem* and competent testimony discloses that such future treatment will be beneficial and curative, the order made by this court at this time should be understood to be without prejudice thereto.

The order of the probate department of the circuit court is reversed and annulled; and it is ordered that the costs on appeal shall be paid from the funds of the guardianship estate.