SWANN, Judge.
Plaintiff Campbell sued Louis B. Stoner and Indian Creek Country Club, Inc. for negligently causing the death of her husband and sought damages under the *475 wrongful death statute and survival statute.[1]
Attached to her complaint was a summons directing the sheriff to serve the defendant Stoner at St. Anthony’s Hospital in St. Petersburg, Florida. The sheriff’s return showed that a copy of the complaint and summons was personally served upon the defendant Stoner on December 15, 1970.
Defendant Stoner filed a motion to dismiss the complaint for lack of jurisdiction over the person, for insufficiency of process, and insufficiency of service of process. In support of the motion, it was alleged that Stoner had been committed to a hospital in Florida under appropriate legal proceeding's initiated by his wife and that he was at the time mentally incapable of accepting service, and that such service was a nullity and not in accordance with the appropriate Florida statutes.
To support the motion to dismiss, an affidavit of Jean T. Stoner was filed. It stated:
“1. I am Jean T. Stoner, wife of Louis B. Stoner.
2. Mr. Stoner and I are residents of West Hartford, Connecticut.
3. On or about December 5, 1970, I made application pursuant to Chapter 394.22 of the Florida Statutes to be appointed guardian of Louis B. Stoner on the ground that he was incompetent.
4. On December 5, 1970, Louis B. Stoner was involuntarily taken to Morton Plant Memorial Hospital, Clearwater, Florida. On December 6, 1970, he was moved to St. Anthony’s Hospital, St. Petersburg, Florida.
5. On December 7, 1970, pursuant to Chapter 394.22 of the Florida statutes Louis B. Stoner was involuntarily confined to St. Anthony’s Hospital, St. Petersburg, Florida, by order of Judge Richard A. Miller, County Judge, Pinellas County, Florida, and pending the report of a committee of two psychiatrists and a layman appointed by said judge pursuant to Chapter 394.22 to report as to the competency of Louis B. Stoner and as to whether he should be confined.
6. On or about December 14, 1970, the aforesaid committee filed its report with the County Court of Pinellas County, which report concluded that Mr. Stoner was incompetent and needed to be confined to a hospital.
7. On December 14, 1970, a hearing was held before Judge Miller on the aforesaid application under Chapter 394.22, but said hearing was recessed until December 18, 1970, upon request of Mr. Stoner’s counsel for opportunity to get another psychiatrist’s report.
8. On December 18, 1970, after a hearing, Judge Miller released Mr. Stoner in custody of his Connecticut attorney, George C. Hastings, for the purpose of traveling to Hartford, Connecticut, for psychiatric treatment, and further ordered that if Mr. Stoner returned to Florida without giving the court satisfactory information as to his competency he could be apprehended, adjudged incompetent and confined to a hospital without notice of hearing.
9. On December 28, 1970, Louis B. Stoner was involuntarily taken to and confined in a hospital in Hamilton, Bermuda, under proceedings pursuant to Bermuda law the exact nature of which I do not know. He is still so confined.”
On February 3, 1971, the trial court, after hearing, entered its order granting the defendant’s motion to dismiss and quashing *476 service of process against the defendant Stoner. Plaintiff then filed a timely motion to vacate and set aside the order quashing service of process and praying in the alternative that the Court appoint a guardian ad litem for the defendant Stoner and order that process be served upon such guardian ad litem. On February 10, 1971, the trial court entered an order denying the plaintiff’s motion to vacate. This interlocutory appeal ensued.
We first observe that there is a legal presumption of sanity in criminal and civil proceedings. Hixon v. State, Fla.App.1964, 165 So.2d 436; Perkins v. Mayo, Fla. 1957, 92 So.2d 641; Schaefer v. Voyle, 88 Fla. 170, 102 So. 7 (1924); 13 Fla.Jur. Evidence § 99.
Under Section 394.22 [5], Fla.Stat., F.S.A., the term “alleged incompetent” is used to refer to the person who is the subject of the incompetency proceeding. Cf. Op.Atty.Gen., 064-51, March 31,1964.
The affidavit recites that the committee report concluded that Louis Stoner was incompetent and needed to be confined to a hospital. There are no copies, certified or otherwise, of any committee reports, or court orders concerning the incompetency of Stoner in the record on appeal. The affidavit does not disclose the nature and extent of Stoner’s alleged incompetency. Section 394.22(6) (b), Fla.Stat., F.S.A., requires the committee report to state whether the condition of the alleged incompetent is acute or chronic, what the apparent cause is, what hallucinations, if any, the alleged incompetent has, and what the age and propensities of the person examined are.
The county judge is not bound by the committee report. If the judge finds from the report and the hearing that the person under investigation is incompetent he shall so adjudge. § 394.22(9), Fla.Stat., F.S.A.
Here, the affiant states that at the second hearing on December 18, 1970 [three days after personal service upon Stoner] “Judge Miller released Mr. Stoner in custody of his Connecticut attorney, George C. Hastings, for the purpose of traveling to Hartford, Connecticut for psychiatric treatment, and further ordered that if Mr. Stoner returned to Florida without giving the court satisfactory information as to his competency he could be apprehended, adjudged incompetent and confined to a hospital without notice of hearing.” We need not and do not pass upon the validity of the oral order set forth in the affidavit. Assuming only the truthfulness of the statement recited in the affidavit we observe that the fact to be weighed in making a judicial determination of incompetency is not whether the individual needs psychiatric treatment, but whether he is incapable of caring for himself or managing his property. In re Pickles’ Petition, Fla.App.1965, 170 So.2d 603. No such fact is recited in the oral order set forth in the affidavit.
This record shows no judicial determination and adjudication that Stoner was incompetent before or after service of process. We do not hold that an adjudication of incompetcncy is necessary in every instance in which an “incompetent” is involved. See § 744.03(5), Fla.Stat., F.S.A.
We believe in such cases there must be an adjudication of incompetency or a sufficient factual showing that one is incapable of either managing his property or caring for himself, or both. The affidavit, sub judice, fails to establish that Stoner was ever adjudicated incompetent or that he was incompetent in fact at the time He was personally served with process in this proceeding. See 25 Fla.Jur. Process § 66.
We conclude that service of process was made upon him in compliance with § 48.-031, Fla.Stat., F.S.A., and that the same was valid. Cf. First National City Bank v. Gonzalez & Co. Suer. Corp., 308 F.Supp. 596 (D.CP.R.1970); Olivera v. Grace, 19 Cal .2d 570, 122 P.2d 564 (1942); Bobell v. Wagenaar, 106 Or. 232, 210 P. 711 (1922); 41 Am.Jur.2d Incompetent Persons § 114; and 44 C.J.S. Insane Persons § 147.
*477 We have considered the other arguments advanced in this appeal, and do not find it necessary to pass upon them.
The order herein appealed is reversed and the cause remanded for proceedings in accordance herewith.
It is so ordered.

. This appeal does not involve the rights of Indian Creek Country Club, Inc.