Argued and submitted September 5, affirmed in part;
reversed in part December 22, 1980

WOODLEY,
*Respondent,*

*v.*

ALLSTEAD,
*Appellant.*

(No. L-4265, CA 15904)

621 P2d 612

David C. Silven, Baker, argued the cause for appellant. With him on the briefs was Silven, Young & Schmeits, Baker.

John L. Jacobson, Baker, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

THORNTON, J.

## THORNTON, J.

Defendant appeals from a judgment declaring plaintiff owner of certain mining rights and holding that defendant had breached a lease agreement with plaintiff to mine a portion of plaintiff's claim. After viewing the area in question, the trial court ordered defendant to pay plaintiff $330 in damages, to account for ore mined and sold after plaintiff gave him notice to quit the premises and to cancel his claim to the extent it overlapped plaintiff's claim. Defendant assigns as error the following:

(1)   Failure to set aside the judgment and grant a new trial on the basis of newly discovered evidence;

(2)   Finding that plaintiff filed valid location notices;

(3)   Finding that plaintiff had properly marked his boundaries;

(4)   Finding that plaintiff had performed the necessary annual assessment work to maintain his mining rights;

(5)   Ordering that defendant cancel his claims; and

(6)   Awarding damages and ordering defendant to account for ore sold.

The essential facts are as follows:

In the summer of 1975, plaintiff discovered a vein of gold-bearing quartz on Forest Service land near Sumpter, Oregon, and placed a discovery post at the site. On August 2, 1975, he filed his notice of location for the Elkhorn-Oregon Quartz Mining Claim. The notice described the location of the claim as follows:

"Claim is located in Secs. 19 & 20, Twps. 9 S. R. 37-1/2 E., and about 1500' NE and 600' North of where pocket was found by loggers on Lake Cr., about 1963. And about 1 mile SW of Lime Quarry."[1]

---

[1] The original notice of location stated the general orientation of the vein as southeast to northwest. On March 29, 1978, plaintiff filed an amended notice which corrected this orientation to southwest to northeast. Apparently, the claim, as marked on the ground, was consistent with the amended notice.

By statute, a mining claim may extend along the vein 750 feet in each direction from the point of discovery and 300 feet perpendicular to the vein on each side at the point of discovery. 30 USC § 23.[2] Plaintiff sought to claim a rectangle 1500 feet by 600 feet, the full area allowed by law. He located the corners of his claim and, according to his testimony, marked each one.[3] He then proceeded to mine at several different locations, mainly at the point of the initial discovery, near one of the two roads (referred to in testimony as the "upper road") which traverse plaintiff's claim. In 1976-78, plaintiff filed annual "proofs of labor" setting forth the improvements made and work done on the claim. Such proofs are required by law to perpetuate a claim-holder's exclusive right to mine a particular area. 30 USC § 28.

During the summer of 1977, defendant was prospecting in the area and found two ore deposits down the hill (generally south) from plaintiff's discovery. Defendant searched the records and noted plaintiff's claim but stated he did not believe from the location description that it was anywhere in the vicinity of his discoveries. He checked the area for evidence of other claims and, finding none, filed location notices for his "Long Eagle" and "Dubble Eagle" claims and staked his boundaries.

The central dispute in this case concerns an ore strike made at a point on the "C" Spur Road, the lower road on plaintiff's claim, which lies within defendant's claim. In late 1977, plaintiff discovered defendant's location notices and approached defendant about a possible conflict. On April 27, 1978, after a period of negotiation, the parties entered into a lease agreement whereby defendant was

---

[2] 30 USC §.23:

"* * * A mining claim located after the 10th of May, 1872, whether located by one or more persons, may equal, but shall not exceed, one thousand five hundred feet in length along the vein or lode; but no location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located. No claim shall extend more than three hundred feet on each side of the middle of the vein at the surface * * *."

[3] Several of plaintiff's stakes were knocked over sometime in late 1976 or 1977 by Forest Service crews. Plaintiff testified that he replaced them as soon as he discovered the destruction. There was also evidence to support a finding that defendant or his partner pulled out certain of plaintiff's stakes.

allowed to mine at that point on "C" Spur Road, in return for which defendant was to pay $10 and a 3 percent royalty on all ore removed by defendant from that location. Defendant signed the lease agreement at his home and mailed it to plaintiff, along with the $10 payment and a letter which reads as follows:

"I got your agreement have complyed [sic] with your wishes by sending you $10.00 money order inclosed.

"I hope I have not misunderstood this agreement. I understand it to be 150 ft. up hill from your center stake and 150 ft. up hill from S.W. corner and N.W. corner.

"I also want us to agree that I may go across on road about [sic] this to my claim to the south with cat so I can open up vain [sic] above the "C" Spur Road.

"Because you have a mill you may want to process your own ore that I take out if any; you may have a better recovery than I do. I hope that if I am not able to take out all that is there we can further this agreement for more time, possiable [sic] another 3 years.

"I do hope you and your friends do well up on your area and that you do find a good vain [sic] in place.

"I will call you when I get cat in up there and want to go across that area where the red quartz is about your center stake.

"Call me at anytime. I will always try to be cooperative and helpful."

A dispute developed as to whether the lease permitted defendant to mine above "C" Spur Road. The lease provided in part that defendant agreed to accept a

"* * * [c]onditional Mining Lease on the area 600 feet in length along the south end line of the Elkhorn-Oregon Quartz mining claim * * * up the hill 150 feet in a northeast direction from said south end line to a point approximately 50 feet above 'C' spur road, and only that portion on a horizontal plane below the existing roadbed of 'C' spur road, 'C' spur road being the first and lowest road that parallels Lake Creek to the east.

*In essence, to mine the mineral below the roadbed of 'C' spur road."* (Emphasis added.)

As defendant's letter indicates, he understood he was entitled to mine the lower 150 feet of plaintiff's claim, which would apparently include some land above the road. In any event, defendant did mine above the road. This led

to a confrontation during which defendant and his partner allegedly blocked plaintiff's access to a portion of his claim. On September 20, 1978, plaintiff gave defendant notice of a breach of the lease agreement and ordered him off the premises. Defendant refused. On September 27, 1978, this action was filed and plaintiff was granted a restraining order enjoining defendant from interfering with plaintiff's access and from disposing of any ore taken from the disputed area during pendency of the action. The complaint also contained causes of actions for ejectment and trespass and a suit to compel cancellation of defendant's claims. Defendant contended that the lease was made under duress, challenged (by affirmative defense) the validity of plaintiff's claims, and sought a declaration that defendant had a valid claim to the mining rights in the area.

As mentioned, the trial court viewed the area prior to trial. The court concluded that, although the description in plaintiff's notice of location was probably insufficient to apprise an inexperienced person unfamiliar with the area of the precise location of the claim, defendant had actual knowledge of the boundaries of claimant's claim and was therefore not in a position to object to the sufficiency of the notice. The court declared plaintiff owner of the mining rights to the area in question and awarded him possession. Defendant was ordered to cancel his location notices and to account to plaintiff for any ore mined at that location after the notice to quit was given. The court awarded plaintiff damages of $320 on his first cause of action, representing lost wages paid by plaintiff to an employe for the period during which defendant blocked plaintiff's access and the cost of hiring a deputy sheriff employed to persuade defendant to vacate the premises. The court found plaintiff's other damages for trespass and wrongful withholding to be speculative and awarded $10 nominal damages on the trespass cause of action.

■　　　We turn first to defendant's assignments of error concerning the adequacy of plaintiff's notice of claim location, boundary markers and proofs of labor. If defendant were to prevail on any of these contentions, it would have the effect of defeating plaintiff's title to the mining rights on the property in dispute, and defendant would become the record owner of such rights by virtue of his claims filed in

1977. We need not detail further defendant's contentions on this score because we conclude he is estopped as a result of having entered into the lease from contesting plaintiff's title to those mining rights. ORS 41.350(5) provides as a conclusive presumption:

"A tenant is not permitted to deny the title of his landlord at the time of the commencement of the relation."

Defendant does not challenge the existence of the lease on appeal. At trial, his sole defense was that he had signed the lease under duress because he feared plaintiff's reprisal. The trial court found this contention ludicrous in light of the circumstances under which defendant signed the lease and the letter which accompanied the signed document.

Defendant seeks to avoid the force of this rule by a number of routes. First, defendant contends that the rule is inapplicable in proceedings in which the landlord's title is put in issue. Plaintiff's title was ostensibly at issue in this case as a result of defendant's challenge to the validity of plaintiff's location notice and boundary markers. The case cited by defendant does not support such an exception in this case. *Collier v. Johnson,* 79 Cal App 322, 249 P 217 (1962). That case holds that a landlord may not have the benefit of the rule where he *voluntarily* places his title at issue as well as suing for possession because then the tenant would be barred by *res judicata* from subsequently challenging the landlord's title without having had his day in court. It would defeat the purpose of the rule, however, if a tenant could obviate it merely by calling the landlord's title into question by affirmative defense.

Next, defendant contends that an exception to the rule lies where the tenant seeks to assert his own superior right to possession stemming from a claim independent of the lease. He cites *Treadgold v. Willard,* 81 Or 658, 668, 160 P 803 (1916), which quotes an Iowa case, *Beck v. Grain Co.,* 131 Iowa 62, 64, 107 NW 1032 (1906), as follows:

"The landlord may not have any interest in the title to the demised premises, but whether he has or not cannot be questioned by the tenant before the expiration of his lease, and whilst in possession under it, *unless based upon some distinct and independent claim to the land."* (Emphasis added.)

Defendant asserts that his valid claim filings in 1977 constitute a "distinct and independent claim."

At first blush, defendant's argument appears supported by the quoted language. The holding, if it means what defendant claims it does, is dictum in both *Treadgold* and *Beck,* as well as in the case relied on in *Beck* for the proposition. *Bowdish v. The City of Dubuque,* 38 Iowa 341 (1874). In none of these cases was the tenant attempting to assert a right of *his own* to possession of the premises. The meaning of the language is clarified in *Bobell v. Wagenaar,* 106 Or 232, 210 P 711 (1922). That case involved an action in ejectment in which defendant attempted to show that plaintiff no longer had title to the premises because he had been divested of the property when it was sold at a sheriff's sale in satisfaction of a judgment against plaintiff held by a third party that subsequently quitclaimed the property to defendant. The court held (106 Or at 244-45) that defendant was not estopped to assert that, *subsequent* to the time possession was surrendered to the tenant under the lease, the landlord transferred his title to another, either voluntarily or by operation of law.

> "'* * * Were this not the case, the lessee, or person claiming under him, might be liable to separate suits for possession, or for rent, by both the original lessor and by a transferee of the latter, and be without any defense to either, since, as we have seen, the transferee of the lessor is entitled to the benefit of any rule of preclusion or estoppel to the same extent as the lessor himself.' 1 Tiffany of Landlord and Tenant, p 493." 106 Or at 244.

The court then cites the identical language from *Beck* quoted above. *See also Haggerty v. Nobles,* 244 Or 428, 438-39, 419 P2d 9 (1966). In this case, therefore, defendant is estopped to assert any alleged defect in plaintiff's title which antedates the making of the lease.

■    To the extent it might be contended that plaintiff performed inadequate labor on the claim during 1978 (and thereby forfeited his claim by operation of law), we find that his proof of labor filed in 1978 demonstrates that he expended more than the requisite $100 in labor and improvements.

■ ■    Defendant contends that the lease does not cover the property in dispute and seeks to establish that fact by

showing that the location description in the notice of claim puts the claim some distance from where plaintiff contends it lies. This is the identical argument defendant made to defeat plaintiff's location notice. Undoubtedly, the actual location of plaintiff's claim is the most difficult factual issue in this case, and the evidence and arguments of both parties in this regard generate a great deal of heat but very little light. The trial court took a view of the area and concluded that the lease in fact covered the point where defendant was mining above "C" Spur Road and that that point lay within the posted boundaries of plaintiff's claim. Even assuming, as the parties seem to, that our review in this case is de novo,[4] we would defer to the trial court's obviously superior position in making this determination.

■    The lease covers the southernmost 150 feet of plaintiff's claim and permits defendant to mine on the portion below "C" Spur Road. There is some ambiguity as to whether the lease also permits defendant to mine above the road. In arguing here that the lease does *not* cover the area above the road, defendant is taking a position contrary to that which he asserted in his letter and upon which he relied to justify mining above the road. In any event, the lease does recognize that the area in question is a part of plaintiff's claim. As mentioned, there is no contention by defendant on appeal that the lease itself is invalid. We conclude that defendant is estopped to deny that plaintiff had title to the mining rights in the area in question.

■    Defendant next assigns as error the award of damages for wrongful withholding and the order to account for ore mined after delivery of the notice to quit.[5] No accounting was requested by plaintiff and the trial court apparently ordered such relief on its own motion. Defendant contends that there is no evidence that any ore at all was

---

[4] Plaintiff's actions for ejectment and trespass are actions at law which we do not review de novo. The suit which requested a temporary injunction during pendency of the lawsuit is not directly involved in this appeal. Whether the suit for cancellation is sufficient to bring the entire cause into equity for purposes of our review need not be decided in light of our deference to the trial court's disposition of this factual issue.

[5] We have considered on our own motion whether the judgment and decree in this case is appealable inasmuch as it orders an accounting for ore removed after

taken from the premises and therefore no basis for an order to account. We agree.

██ ██    It is clear that plaintiff neither pleaded nor proved that defendant wrongfully removed ore nor withheld royalties to which plaintiff was entitled as damages.[6] Nor did plaintiff bring a suit for an equitable accounting nor plead fraud, breach of fiduciary duty or other allegation which would invoke the equitable jurisdiction of the court to compel an accounting. *Smith v. Howell,* 91 Or 279, 301, 176 P 805 (1919); *Flaherty v. Bookhultz et al,* 207 Or 462, 467, 291 P2d 221 (1955), 297 P2d 856 (1956). Plaintiff did request and receive an order restraining defendant from mining or selling any ore during the pendency of the suit. An accounting may be available incident to other equitable relief. *Smith v. Howell, supra,* 91 Or at 301. Absent a showing that defendant mined or sold ore in violation of this injunction, however, the accounting was erroneously ordered. *See Phez Co. v. Salem Fruit Union,* 103 Or 514, 535-36, 201 P 222, 205 P 970 (1922).

██ ██    In an action in ejectment, a successful plaintiff may also recover damages for wrongful withholding of the property. ORS 105.005. The wages paid to plaintiff's employe who was unable to work during the week defendant wrongfully withheld the land and the cost of the deputy to prevent further encroachment by defendant are recoverable. The fact that plaintiff may not have earned a profit from his employe's labor is immaterial.

██    Defendant next contends that the court erred in compelling cancellation of his claims because his Dubble Eagle claim does not overlap plaintiff's claim at all if plaintiff's southwestern end line is restricted to 600 feet.

---

notice to quit was given and such an accounting was not made. We conclude that it falls within the exception to the general rule that an order to account is not final and appealable because it is clearly incidental to the main rights to be adjudicated—the validity of plaintiff's title to the mining rights and whether defendant breached the lease agreement—particularly in view of the fact that defendant challenges plaintiff's very right to an accounting. *Murphy et al v. Royce,* 214 Or 626, 627-28, 310 P2d 623 (1958).

·  [6] Defendant did testify that he removed two or three tons of ore from the area in 1978, but it appears that this occurred prior to the notice to quit. As mentioned, plaintiff did not request any damages representing unpaid royalties for this ore.

Apparently, the length of the line as marked by defendant's boundary stakes is 700 feet. The Lone Eagle claim only conflicts in the disputed area. The court recognized this error, however, on defendant's motion to set aside the judgment and held:

> "It does appear that the defendant should only be required to cancel his claims insofar as they overlap the plaintiff's claim with the southwesterly line thereof to be limited to 600 feet. The decree should be modified accordingly."

Defendant's assignment of error is moot.

■■ ■■ Finally, defendant contends that his motion to set aside the judgment and grant a new trial should have been allowed because of newly discovered evidence—namely, that during the summer of 1979, plaintiff was mining in an area which is consistent with the description in the original notice of claim and which is outside the boundaries of the claim as presently marked. This, defendant argues, supports the inference that plaintiff's "real claim" is not where the trial court found it to be. Such motions are not favored and rest largely in the discretion of the trial court. *Lane County Escrow v. Smith, Coe,* 277 Or 273, 288, 560 P2d 608 (1977). Miners are free to prospect outside their claims on other unclaimed property. We find no abuse of discretion here.

Affirmed in part; reversed in part.