Argued and submitted September 27, 1993, reversed and remanded with instructions March 2, 1994

Louise G. BRUNSWICK,
fka Louise G. Whipple,
*Appellant,*

*v.*

Michael Gary RUNDELL
and E. Jean Rundell,
*Respondents.*

(91CV-2888CC; CA A76551)

869 P2d 886

Joel S. DeVore argued the cause for appellant. With him on the briefs was Luvaas, Cobb, Richards & Fraser, P.C.

Wallace D. Cegavske argued the cause for respondents. With him on the brief was Cegavske, Johnston & Associates, P.C.

Before Deits, Presiding Judge, and Riggs, Judge, and Durham, Judge pro tempore.

RIGGS, J.

## RIGGS, J.

Plaintiff appeals from a judgment dismissing her action for ejectment and declaring that defendants had established a boundary by agreement. We reverse.

Plaintiff owns land lying north of defendants' property. Where the properties adjoin, they are timber land. Plaintiff's predecessor in interest, Whipple, now deceased, was friendly with defendants. An old, straight fence once followed the boundary line between the two properties. In 1974, Michael Rundell and Whipple walked along the site of the old fence and agreed that Rundell should build a new fence with supplies furnished by Whipple.

The new fence was a wire fence suitable for containing livestock. It meandered to the north of the old fence by as much as 40 feet. The path of the new fence was dictated by where postholes could be dug in the uneven terrain. The fence was begun in 1974 and finished around 1977, and the fenced area included almost an acre of Whipple's timber land. After its completion, defendants began to graze animals on the land enclosed by the fence, pursuant to a four-year grazing lease. The lease, dated 1976, described the land according to the old border and not according to the new fence. Defendants grazed animals on the south side of the new fence until 1988 or 1989, and the new fence fell into disrepair.

Title to Whipple's property passed to plaintiff in 1989. In 1990, the property was surveyed and the deed line was determined to be a straight line close to the site of the old fence. Plaintiff asked defendants to accept the surveyed line as the boundary, but defendants refused. Plaintiff sued for ejectment. Defendants counterclaimed that they held title to the disputed strip under the theories of boundary by agreement, adverse possession and estoppel. In the alternative, they asked for a boundary determination under ORS 105.705.

The trial court found that "Jim Whipple and [Michael] Rundell agreed, at least impliedly, that the fence line to be built by [Michael] Rundell would be the boundary." Based on its belief that there was an agreement that the new fence would serve as the boundary, the trial court denied

plaintiff's request for ejectment and found in favor of defendants on their counterclaim of boundary by agreement.[1] Due to its disposition of the counterclaim of boundary by agreement, the court did not reach defendants' other counterclaims.

On appeal, plaintiff assigns error to the trial court's judgment in favor of defendants on their counterclaim of boundary by agreement. She argues that defendants' alternate counterclaims are also unfounded. Defendants argue only that they have title to the disputed land by virtue of either a boundary by agreement or adverse possession. We do not, therefore, consider the counterclaims of estoppel or the right to a boundary determination under ORS 105.705.

■ Although the parties agree that the standard of review in this case is *de novo*, we pause to consider why *de novo* review is appropriate in this ejectment case. An ejectment case is an action at law. *Woodley v. Allstead*, 49 Or App 875, 883 n 4, 621 P2d 612 (1980). However, plaintiff appeals the judgment entered on defendants' equitable counterclaims. In *Nedry v. Morgan*, 284 Or 65, 584 P2d 1381 (1978), the Supreme Court said:

> "Defendant's counterclaim is in the nature of a suit to quiet title, which is an equitable proceeding, ORS 105.605. Because the issues raised on appeal all relate to defendant's counterclaim, we treat the appeal, as have the parties, as an appeal from an equitable decree. Therefore, *de novo* review is required by ORS 19.125(3)." 284 Or at 67 n 1.

Likewise, we treat this appeal as one from an equitable judgment and review *de novo* the trial court's findings that defendants established a boundary by agreement. Although we give considerable weight to the trial court's credibility findings, they do not bind us. *Allen v. Meinig*, 109 Or App 341, 347, 819 P2d 744 (1991), *rev den* 313 Or 209 (1992).

■ A boundary by agreement is established when the parties agree to resolve uncertainty over a boundary's location by recognizing a particular line as the boundary. *Ross v.*

---

[1] The court referred to boundary by agreement as "boundary by acquiescence." Boundary by agreement is also referred to as "the doctrine of practical location." The terms all refer to an express or implied agreement to resolve uncertainty over a boundary by adopting a particular line as the boundary.

*DeLorenzo*, 65 Or App 586, 590, 672 P2d 1338 (1983), *rev den* 296 Or 411 (1984). The parties must intend to recognize the line as the *permanent* boundary, not as a temporary barrier. 65 Or App at 590. Michael Rundell testified that he and Whipple agreed that the new fence would be the boundary. The trial court found that testimony credible. Because it found that defendants had established a boundary by agreement, the trial court must have inferred from Rundell's testimony that the new fence was intended as a *permanent* boundary. The degree of deference we give to a trial court's credibility findings varies with the importance of the trial court's opportunity to observe the demeanor of witnesses. *McCoy and McCoy*, 28 Or App 919, 924, 562 P2d 207, *mod* 29 Or App 287, 563 P2d 738 (1977). As Judge Richardson said in his separate opinion in *Lewis and Clark College v. Bureau of Labor*, 43 Or App 245, 256, 602 P2d 1161 (1979), *rev den* 288 Or 667 (1980):

> "[C]redibility (more properly weight) is determinable from a number of factors other than witness demeanor. The credibility, *i.e.* weight, that attaches to testimony can be determined in terms of the inherent probability, or improbability of the testimony, the possible internal inconsistencies, the fact it is or is not corroborated, that it is contradicted by other testimony or evidence and finally that human experience demonstrates that it is logically incredible."

■     Here, demeanor is only one of many factors used to determine the inference to be drawn from Rundell's testimony. For example, the grazing lease and the easement refer to the deeded boundary rather than the new fence, even though both documents were signed after the new fence allegedly established the permanent boundary. Furthermore, Rundell testified that, while the new fence was under construction, Whipple was considering a professional survey of his southern boundary. That testimony is inconsistent with the court's inference that the new fence was intended as a permanent boundary. Rundell's statements that the new fence was constructed to restrain livestock, taken together with his statement that the new fence fell into disrepair after the livestock's departure, is also inconsistent with the trial court's inference. The trial court's inference is further weakened by a lack of evidence that the boundary was in dispute when the new fence was built.

We reject the trial court's finding concerning Rundell's testimony that suggests that the new fence was intended as a permanent boundary.[2] We find that the new fence was not so intended. Therefore, the trial court erred in entering judgment for defendants on their counterclaim for boundary by agreement.

■     Defendants argue in the alternative that they established title to the disputed land by adverse possession. Adverse possession is shown when a party has maintained actual, open, notorious, exclusive, hostile and continuous possession of the property. ORS 105.620(1)(a). Defendants argue that, if there was no agreement to fix the new fence line as the boundary, then the possession of the disputed land was hostile. Defendants' argument is flawed, because Whipple could have permitted the new fence to be built as a temporary barrier so that defendant's livestock could graze on the disputed land. Two uncontroverted facts show that use of the disputed land was permissive: Whipple furnished fence materials and signed a grazing lease. "Permissive use, no matter how long continued, is not adverse, and when proved, denies the adverse possession." *Scott v. Elliott*, 253 Or 168, 178, 451 P2d 474 (1969). Defendants did not establish the alternative ground of title by adverse possession.

Reversed and remanded for entry of judgment setting boundary in accordance with the description contained in paragraph 1 of plaintiff's complaint.

---

[2] There is no suggestion in the record that any witness was not credible in the sense of being untruthful. We question only the trial court's decision to give weight to some of Rundell's responses while ignoring others, and also to the inferences drawn from his testimony.