Argued and submitted January 15, reversed and remanded April 16, petition for review allowed July 15, 1997 (325 Or 491)

Jay FAULCONER
and Sheila Faulconer,
husband and wife,
*Appellants,*

*v.*

Billie J. WILLIAMS;
John C. Mackey and Jeanne L. Mackey;
Robert D. Webb and Carolyn L. Webb;
Randy L. Bahler and Donna J. Bahler;
Kenneth J. Stevenson and Joanne Stevenson;
Jerry L. Lasater and Dawn Lasater;
Elmer C. Williams and Marie E. Williams; and
Michael A. Revelle and Sandra A. Revelle,
*Respondents.*

(95-10169; CA A93542)

936 P2d 999

George B. Heilig argued the cause for appellants. With him on the brief was Cable, Huston, Benedict, Haagensen & Ferris.

William Cohnstaedt argued the cause and filed the brief for respondents.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

## RIGGS, P. J.

This case concerns the existence of a 20-foot ease-ment for roadway purposes across the north portion of plain-tiffs' property. Plaintiffs brought an action to quiet title, claiming that the easement in question had been extin-guished due to adverse possession by plaintiffs and their predecessors in interest. Alternatively, plaintiffs argued that the easement had been extinguished due to abandonment. The trial court rejected each of plaintiffs' claims. On appeal, plaintiffs contend that the trial court erred in determining that their possession of the easement was not "hostile," in determining that defendants had not abandoned the ease-ment, and in determining alternatively that even if the ease-ment had been extinguished by adverse possession by plain-tiffs' predecessors in interest at some point in the past, the easement was recreated when the property was conveyed to plaintiffs subject to the easement.[1] We review the judgment of the trial court *de novo*, ORS 19.125(3); *Brunswick v. Rundell*, 126 Or App 582, 869 P2d 886 (1994), and reverse.

Plaintiffs own a parcel of residential real property, Tax Lot 300, in Benton County. This property is bordered on the west by a county road and on the east by Tax Lot 100. Defendants are owners of real property further east of Tax Lot 100. In 1956 and 1957, Passon, who then owned Tax Lot 300, conveyed to defendants' predecessors in interest a 20-foot easement running east and west over the northernmost portion of Tax Lot 300, variously described as a "right of way," or an easement "for roadway purposes." This easement was described in metes and bounds. Tax Lot 100, east of Tax Lot 300, was subject to a similar easement. Thus, the ease-ment ran east-west from the county road to the properties of defendants' predecessors in interest. Defendants' predeces-sors in interest and Passons then constructed a private road-way running east to west to connect the properties east of

---

[1] Respondents indicated in the summary of their brief that they would cross-assign as error several of the trial court's factual findings. However, their brief con-tains no cross-assignments of error. ORAP 5.57 (cross-assignments of error). A cross-assignment of error is subject to the general rules concerning presentation of assignments of error contained in ORAP 5.45. In any event, on *de novo* review, we agree with the trial court's factual conclusions.

Tax Lot 100 to the county road. However, Passons mistakenly believed that the northern boundary of Tax Lot 300 was represented by an east-west fence. That fence actually was located some 20 feet north of the northern boundary of Tax Lot 300. The private roadway was constructed immediately south of the fence, on the parcel of property immediately to the north of Tax Lot 300.[2] Immediately south of the private road, at the actual (rather than the presumed) northern boundary of Tax Lot 300, Passons built a wall that fenced his residence on Tax Lot 300 from the private road.

Inside the fenced area, Passons and subsequent owners planted trees and maintained this area as part of the yard of Tax Lot 300. Tax Lot 300 was sold to Williams in 1959, but the deed made no express reference to the easement. However, Williams knew of the easement, because he owned other property that was benefitted by the easement. Williams, in fact, had helped construct the original private road in 1957, believing at that time that it was being constructed within the easement over Tax Lot 300. Williams sold Tax Lot 300 to the Fryers in 1964, and the deed conveyed the property "subject to" the easement as described in the earlier deeds. The Fryers believed that the fence to the north of the private road was their property line and that the private road was built on the easement described in their deed. The Fryers also added a fence at the easternmost portion of the actual easement, and thus any east-west travel through the easement would have been impossible. Tax Lot 300 was conveyed in 1982 to the Hendricksons, and the deed described the property as free from encumbrances "except for" the easement. The Hendricksons conveyed the property to plaintiffs in 1989, free from encumbrances "except" the above-described easement. Plaintiffs, like their predecessors in interest, believed that the easement was over the existing private roadway, and continued their predecessors' use of the actual easement as a part of their yard. Plaintiffs and their predecessors in interest all maintained a wall or fence between the private road and the yard of Tax Lot 300.

---

[2] The status of the road on the lot to the north of Tax Lot 300 is not at issue in this case.

In 1995, a survey revealed the nearly 40-year-old mistake as to the location of the easement. Plaintiffs then sought to quiet title in the 20-foot strip described in the easement. Defendants, owners of the dominant estates, disputed that plaintiffs had successfully established that they had either adversely possessed the easement or that defendants had abandoned it.

The trial court ruled in defendants' favor, based on three separate conclusions of law. First, the trial court ruled that plaintiffs and their predecessors in interests had not adversely possessed the easement, because their use of this area as a yard was not "hostile." Second, the trial court ruled that defendants and their predecessors in interest had not abandoned the easement. Third, the trial court ruled that, even if the predecessors in interest's use of the easement as a yard had extinguished the easement, the deed conveying Tax Lot 300 to plaintiffs subject to the easement recreated the easement.

■ An easement may be extinguished in several ways: by consent, by prescription, by abandonment, by merger, or, if it is an easement by necessity, by the cessation of the necessity. *See Cotsifas v. Conrad,* 137 Or App 468, 471, 905 P2d 851 (1995). Plaintiffs claim that the easement on their property was extinguished by prescription (*e.g.*, adverse possession) or by abandonment.

■ We first turn to the question whether defendants abandoned the easement. Nonuse of an easement, by itself, does not establish that an easement has been abandoned. *Conner v. Lucas,* 141 Or App 531, 538, 920 P2d 171 (1996). In addition to nonuse, the party seeking to extinguish the easement must show "either [a] verbal expression of an intent to abandon or conduct inconsistent with an intention to make further use." *Abbot v. Thompson,* 56 Or App 311, 316, 641 P2d 652, *rev den* 293 Or 103 (1982). Plaintiffs cite defendants' use of the actual private road located directly north of the easement as conduct that is inconsistent with an intention to make use of the easement on their property. We disagree. In this case, all of the parties and their predecessors in interest were mistaken about the location of the easement for some 40 years. The conduct of defendants and their predecessors in

interest shows that they had every intention of using the easement but simply were mistaken about where it was located. Nothing in the record establishes that any of the defendants or their predecessors in interest intended to abandon the easement.

■ We next turn to the question whether the easement was terminated by prescription, due to plaintiffs' adverse possession of it. To establish adverse possession, the claimant must show that his or her use of the property was open, notorious, exclusive, continuous and hostile for a 10-year period, and that the use was inconsistent with the use of the easement by the owners of the dominant estate. *Slak v. Porter*, 128 Or App 274, 278, 281, 875 P2d 515 (1994). The party claiming adverse possession must demonstrate each element by clear and convincing evidence. *Id.*[3] The key questions in the present case are whether plaintiff's possession of the easement was "hostile," and whether it was "continuous."[4] "Possession of realty under a mistaken belief of ownership normally satisfies the element of hostility without the need for further inquiry into the claimant's subjective intent, but the belief must result from a 'pure mistake,' rather than a mistake based upon a 'conscious doubt.' " *Lee v. Hansen*, 282 Or 371, 375, 578 P2d 784 (1978).

■ The trial court found that plaintiffs had not established that their use of the easement was "hostile." The trial court concluded that plaintiffs and their predecessors in interest had not adversely possessed the easement by maintaining it as a fenced yard, planting trees and shrubs in it, etc. In *Slak*, this court considered a similar claim concerning the extinguishment of an easement. In that case, a three-foot easement for access to a river was created in 1958, but in 1959 a fence was built on the servient estate that blocked the easement, and trees and other vegetation was planted in the easement. Due to these obstructions, none of the owners of the dominant estate was able to use the easement. 128 Or

---

[3] ORS 105.620, enacted in 1989, makes similar provisions. However, as discussed below, the easement at issue in the present case was extinguished before that statute was enacted.

[4] No issues are present on appeal in the present case concerning the requirements that the use be "open and notorious" and "exclusive."

App at 278. The "open and notorious" requirements were met by construction of a fence blocking access to the easement. *Id.* at 279. The "exclusive" requirement was met because "construction of the fence and the planting of vegetation directly in the easement [was] use consistent with ownership." *Id.* at 279. The existence of the fence and the vegetation in the easement over a 10-year period met the requirement that the possession be "continuous." *Id.* at 280. The "hostility" requirement was met by showing that the owners "possessed the easement intending to be its owner and not in subordination to the true owner." *Id.* The construction of the fence across the easement also established that the use of the easement by the owners of the servient estate was inconsistent with the use of the easement by the owners of the dominant estate. *Id.* at 281.

In the present case, as in *Slak*, the owners of the dominant estates were fenced out of the easement by the owners of the servient estate, and the owners of the servient estate planted trees and other vegetation within the easement. Those obstructions would have prevented use of the easement for its designated purpose. Because of the parties' mistake about the location of the easement, it cannot be said that plaintiffs' use of the easement as part of their yard was permissive. Plaintiffs demonstrated that they "possessed the easement intending to be its owner and not in subordination to the true owner." *Id.* Indeed, given that plaintiffs believed themselves to be the true owners of this land, and believed that the defendants' only interests were in the road located directly north of the easement, it is clear that they had the requisite intent. The nearly 40-year-old mistake about the location of the easement was a "pure mistake," *Lee*, 282 Or at 375, because plaintiffs believed that the private roadway was over the easement. Thus, we disagree with the trial court's conclusion that plaintiffs' use of the land was merely permissive, and not hostile. *See Schoeller v. Kulawiak*, 118 Or App 524, 848 P2d 619, *rev den* 317 Or 272 (1993) (using roadway easement for yard and garden was hostile rather than permissive).

■ Defendants argue that the easement could not have been extinguished by adverse possession because only easements that have previously been used by dominant estates

may be extinguished. Defendants cite *Patterson v. Chambers Power Co.*, 81 Or 328, 159 P 568 (1916), for the proposition that the owner of a servient estate may not prescriptively dispossess the rights of the benefitted property owners until the benefitted property owners actually have begun to use the easement. *Patterson* does not stand for such a sweeping proposition. The situation described in that case differs significantly from the present case. In *Patterson*, the issue was expansion of a waterway over the plaintiff's servient estate. The easement in question was to be "as deep and wide as may be necessary to run the mills now on the tract sold, and all other mills or machinery that may, at any time, be placed thereon." 81 Or at 333. The key to that case was that "the deed *expressly* permit[ted] a future increase in the flow of water, and *expressly* provide[d] that the ditch may be widened to accommodate it." *Id.* at 343. By contrast, the easement in the present case was fixed at a specific size and did not expressly contemplate any widening or any expansion in use. The present easement was fixed, although the parties were mistaken about *where* it was fixed. Plaintiffs and their predecessors in interest possessed that fixed area intending to be its owners. Their possession of the 20-foot strip was "hostile."

█     Finally, we turn to the question whether plaintiff's use of the disputed land was continuous over the requisite period of 10 years. Plaintiffs have owned the property since only 1989. The question, then, is whether they are permitted to "tack" their open, notorious, exclusive and hostile possession of the disputed property to the open, notorious, exclusive and hostile possession of the same property by their predecessors in interest. Generally, in cases involving adverse possession, such tacking is allowed. *See, e.g.,* ORS 105.620(1) (person may acquire fee simple to real property if person and predecessors in interests maintain actual, open, notorious, exclusive, hostile and continuous possession of the property for 10 years). However, in the present case it is disputed that plaintiffs' possession of the easement was "continuous" with that of their predecessors in interest, the Hendricksons. When plaintiffs bought Tax Lot 300, they bought it "free from all encumbrances, except: An easement for right-of-way, in common with others, over the North 20 feet, as set forth in

instrument recorded March 4, 1957, Book 158, Page 510, Benton County Deed Records."

■    Evidence in the record establishes that the Fryers, who owned the property from 1964 to 1982, blocked access to the easement from not only the north but from the east and west as well. The Fryers occupied the easement openly, notoriously, exclusively, and hostilely, for over 10 years. An adverse possessor's interest vests when the statutory period for possession expires. ORS 12.050; *Markovich v. Chambers*, 122 Or App 503, 506, 857 P2d 906 (1993). Thus, at some point during their nearly 20-year ownership of Tax Lot 300, the Fryers extinguished the easement and acquired entire ownership over the disputed portion of Tax Lot 300.

■    The question then becomes whether, as the trial court found, the Fryers' transfer of their interest in Tax Lot 300 to the Hendricksons in 1982, and the Hendricksons' transfer of Tax Lot 300 to plaintiffs in 1989, which made specific reference to the original easement, effectively recreated the easement in favor of defendants each time Tax Lot 300 was transferred. If so, then plaintiffs have not established the requisite 10-year continuous adverse possession. We conclude otherwise.

The 1982 and 1989 transfers did not recreate the extinguished easement in favor of defendants. Although there appear to be few cases on point, what little authority exists on this issue points to a conclusion that a reference in a deed to an extinguished easement does not recreate the easement in favor of the original dominant estates. The reason this is so is explained persuasively in the decision of the District of Columbia Court of Appeals in *Smith v. Tippett*, 569 A2d 1186 (DC 1990). In *Smith*, as in the present case, one of the parties argued that even if a predecessor in interest had extinguished an easement through adverse possession, the former easement was recreated when the predecessor in interest transferred the property by means of a deed that made express reference to the easement. 569 A2d at 1192. The District of Columbia Court of Appeals rejected that argument:

"Since each of these deeds [from a predecessor in interest to another predecessor in interest, and then to the defendant]

recognized a four-foot easement, [the plaintiff] contends, then such an easement must continue to exist. * * * [T]he grantors of each of those deeds might perhaps be heard to claim that the grantees took only what was in the record title, and no more. Anything that the grantees did not take, however, would surely still belong to the grantors, and not to a stranger [such as the plaintiff]."

*See also* J. Bruce & J. Ely, Jr., *The Law of Easements and Licenses in Land* ¶ 10.07 (1995) ("Once an easement * * * is terminated by prescription, it is not revived simply by the owner of the servient estate making reference in a deed to the prior easement as if it still existed."); *Scott v. Curtis*, 103 Or App 389, 393-94, 798 P2d 248 (1990) (party was not able to revive extinguished easement but could create new easement).

■ The easement at issue in the present case was extinguished at some point during the Fryers' ownership of Tax Lot 300. At that point, defendants or their predecessors in interest lost all claim to the easement. If the Fryers' transfer of the property to the Hendricksons "except for" the easement recreated an easement at the same location as the previous easement, then the owners of that new easement would have been the Fryers, and not any of the defendants or their predecessors in interest. Similarly, when the property was transferred from the Hendricksons to plaintiffs in 1989, any easement would then have belonged to the Hendricksons (and through them, the Fryers), and not to defendants or their predecessors in interest.[5] In sum, if an easement has been extinguished by prescription, a new easement may be created if that is the intention of the property owner, but such a newly created easement does not automatically benefit the dominant estates that had been benefitted by the prior easement in the same location.

Reversed and remanded for entry of judgment quieting title to disputed property in plaintiffs.

---

[5] Neither the Fryers nor the Hendricksons are parties to the present action. Thus, we need not decide whether they intended to create a new easement in the same location as the previous easement. The only issue in the present case is whether the old easement, in favor of defendants, was extinguished.