2008 WY 66

**Eugene R. BRUMBAUGH and Elizabeth D. Brumbaugh, husband and wife, Appellants (Plaintiffs),**

v.

**MIKELSON LAND COMPANY, a Montana Corporation, Appellee (Defendant).**

No. S–07–0218.

Supreme Court of Wyoming.

June 12, 2008.

696

Representing Appellants: S. Joseph Darrah of Darrah, Darrah & Brown, P.C., Powell, Wyoming.

Representing Appellee: Thomas P. Keegan of Keegan & Winslow, P.C., Cody, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶1] In the early 1970s, developer Flying L Skytel (Skytel) established the Skytel Country Estates subdivision in Park County, Wyoming by filing a plat and a declaration of restrictive covenants. After Eugene R. and Elizabeth D. Brumbaugh's (the Brumbaughs) predecessor in interest purchased two Skytel Country Estates lots, Skytel partially vacated the plat, amended the restrictive covenants and sold the remaining property to Mikelson Land Company (MLC), which incorporated it into a larger subdivision. In 2003, the Brumbaughs purchased their lot and sought to construct a home on the land. MLC, however, denied their requests for easements for power, sewer and access; to tap into a water system; and to build central livestock facilities.

[¶2] The Brumbaughs filed a declaratory and injunctive relief action against MLC seeking to enforce the rights they claimed pursuant to the Skytel Country Estates restrictive covenants and plat. The district court granted summary judgment in favor of MLC, holding the Brumbaughs were not entitled to any of their requests for relief. On appeal, we hold, as a matter of law, the restrictive covenants and plat granted the Brumbaughs, as owners of a lot in the original Skytel Country Estates subdivision, the rights to easements for power, sewer and access. Because the scope and location of the easements were not set out in the subdivision documents, those matters must be determined on remand considering what is reasonable and convenient under the circumstances. The subdivision documents do not, however, grant the Brumbaughs the rights to connect to a water system or to locate central livestock facilities on subdivision property. In addition, we conclude that MLC does not have the right to amend the declaration of covenants for the Skytel Country Estates subdivision and the appointment of MLC as the architectural committee for the subdivision was invalid. Consequently, we affirm in part, reverse in part and remand.

**ISSUES**

[¶3] Although the parties present a convoluted statement of the issues, we believe they can be distilled to:

1. What was the effect of the partial vacation of the Skytel Country Estates plat and corresponding amendment to the declaration of restrictive covenants?

2. Whether the restrictive covenants and/or plat of the Skytel Country Estates subdivision grant the Brumbaughs easements for power, access, and a sewer system; the right to connect to a water system developed for an adjacent subdivision; and/or the right to place central livestock facilities in the common area of the original subdivision?

3. Can MLC amend the Skytel Country Estates declaration of covenants?

4. Was MLC properly appointed as architectural control committee for the Skytel Country Estates subdivision?

**FACTS**

[¶4] On January 1, 1970, Skytel, a Wyoming corporation, conveyed to the Brum-

baughs' predecessor-in-interest, Vincent Pascale, Lots 81 and 82 of the Skytel Country Estates subdivision. The deed stated it was "subject to reservation, exceptions, easements and rights-of-way in existence or of record and to declaration of restrictive covenants for Skytel Country Estates."

[¶ 5] On February 9, 1970, Skytel recorded a plat for the Skytel Country Estates subdivision. The plat showed numerous subdivision lots which were circular in shape. The lots were surrounded by areas referred to by the parties as "common areas" or "buffer areas." The plat showed some roads in the subdivision, and the certificate of dedication stated:

> Access for the lots within the Skytel Country Estates is provided by a private road system linked to the Park County road system.

[¶ 6] On March 30, 1971, Skytel executed a Declaration of Restrictive Covenants for Skytel Country Estates, which specifically incorporated the plat by reference. The covenants stated in relevant part:

*plans and restrictions*

> The following general use and building plans and restrictions for said land and area are hereby established. It is covenanted, agreed and declared that all said land is held subject to these plans and restrictions, all of which shall be covenants running with the land and shall be binding upon and inure to the benefit of the undersigned, its grantees, successors and assigns. It is further covenanted, agreed and declared that all subsequent grants of said land or any part thereof shall be subject to these plans and restrictions.
>
> . . . .
>
> 2. .... All residence buildings shall be modern and have septic tanks with leaching fields or tanks according to the standards of the Wyoming State Health Department.
> 3. No livestock may be kept on the land[,] but livestock may be kept in central facilities to be provided for the area at reasonable cost. . . .
> 4. If water should become scarce[,] meters will be installed in an approved

manner at the property owner's expense. . . .

> 5. All residences, buildings and sewerage systems must be approved before installation or construction by an architectural committee appointed annually by the undersigned to serve for one year.
> 6. All easements required for sewer, water[,] power and other utilities across said lands either for lots in the subdivision or for access to and from the subdivision are hereby specifically reserved.

*violations*

> The general plans and restrictions contained herein inure to the benefit of the purchasers of all lots within said subdivision and the undersigned. If any grantee, his heirs, successors or assigns violates or attempts to violate any of the plans, covenants and restrictions herein it shall be lawful for the undersigned or any other person or persons owning any land in said subdivision to take appropriate proceedings against the person or persons violating or attempting to violate these plans, covenants and restrictions for the purpose of restraining such violation and recover any damages resulting therefrom. Invalidation of any one of these covenants or restrictions by judgment or court order shall not affect any of the other covenants and restrictions herein, all of which shall remain in full force and effect.
>
> These restrictive covenants may be modified at any time by vote of the owners of at least two thirds of the land area within the Skytel Country Estates.

[¶ 7] On January 10, 1973, Skytel recorded an amendment to the declaration of restrictive covenants and a partial vacation of the plat for the Skytel Country Estates subdivision. The amendment to the declaration of restrictive covenants stated, in relevant part:

> All of the restrictive covenants pertaining to Skytel Country Estates except insofar as they pertain to Lots 77, 81 and 82 are hereby annulled and cancelled and shall be superseded by the protective covenants pertaining to Cody's Country, ac-

cording to the plat to be filed thereof, which plat shall include the land now described as Skytel Country Estates, together with other lands.

The amendment also stated that the owners of Lots 77, 81 and 82 could choose to become part of the Cody's Country subdivision but, otherwise, would "remain subject to all of the terms and conditions of the restrictive covenants for Skytel Country Estates." The partial vacation of the plat stated that "vacation of all of said plat excepting Lots 77, 81 and 82 will not abridge or destroy any of the rights and privileges of other proprietors in said plat." Shortly thereafter, Skytel conveyed the remaining Skytel Country Estates subdivision property, except lots 77, 81 and 82, to MLC, subject to "patent reservations, rights of way and easements of record, building, use and zoning restrictions . . . ."

[¶ 8] Mr. Pascale passed away in 2002 and, on September 18, 2003, the trustee of a trust established pursuant to Mr. Pascale's will conveyed Lot 82 of Skytel Country Estates to the Brumbaughs. In June 2004, Cecil A. Legg, who was formerly the president of Skytel and is now deceased, appointed MLC as the architectural committee for Skytel Country Estates. He signed the document as an individual.

[¶ 9] In July 2005, the Brumbaughs filed a declaratory judgment and injunctive relief action in the district court. They sought a declaration that, pursuant to the original Skytel Country Estates subdivision documents, they are entitled to: easements for utilities; place their septic system in the common area of the subdivision; use all developed roads in the subdivision, including Heidi Drive; tap into the water system used by the Cody's Country subdivision; and construct and use central livestock facilities within the common area for their horses. In addition, they sought a declaration that Mr. Legg's appointment of MLC as the architectural committee for Skytel Country Estates subdivision was invalid. The Brumbaughs also requested comparable injunctive relief. MLC answered and counterclaimed for declaratory and injunctive relief contrary to the Brumbaughs' claims. MLC also sought a declaration that it had the authority to modify the Skytel Country Estates subdivision covenants.

[¶ 10] The parties filed cross motions for summary judgment, and the district court granted summary judgment in favor of MLC, ruling:

(1) That the Plaintiffs['] claims are barred by the Statute of Frauds. There is no deed or writing that gives them a right to easements, water rights or rights to the buffer zone.

(2) The vacation of the plat does not abridge or destroy any of the rights or privileges of the Plaintiffs in the plat, and the only rights or privileges associated with the plat is a private road system linked to the Park County road system.

(3) The Plaintiffs['] claim to rights and easements is wholly unsupported in law or fact. The language used in the Declaration of Restrictive Covenants clearly indicates that the reservation of rights is reserved to the title owner which, at the time of their creation, was Flying L Skytel and is now currently the Mikelson Land Company.

(4) That the Plaintiffs have demonstrated no right, in either Skytel or themselves, to a water permit or a water right. A permit from the State of Wyoming and a Special Use Permit issued by the United States Forest Service are issued in the name of Mikelson Land Company.

(5) That the Mikelson Land Company is entitled to vote on the modification of the covenants as it is the owner of more than two-thirds of the original land area within the Skytel Country Estates. It is clear, from the language of the covenants, that the grantor is entitled to vote on modification because the covenants refer to ownership of land within the subdivision, as opposed to lots.

(6) That the appointment of the Mikelson Land Company to the Architectural Control Committee was valid.

The Brumbaughs appealed.

## SUMMARY JUDGMENT STANDARD

[¶ 11] Summary judgment motions are governed by W.R.C.P. 56(c):

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

We review a district court's summary judgment rulings *de novo,* using the same materials and following the same standards as the district court. The facts are reviewed from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Sunshine Custom Paints & Body, Inc. v. South Douglas Highway Water & Sewer Dist.,* 2007 WY 206, ¶ 8, 173 P.3d 398, 401 (Wyo.2007); *Cook v. Shoshone First Bank,* 2006 WY 13, ¶ 11, 126 P.3d 886, 889 (Wyo.2006).

## DISCUSSION

■■■ [¶ 12] Before we address the specific issues presented in this case, we will discuss our rules for interpreting covenants and plats. A covenant is a promise "to do, or to refrain from doing, certain things with respect to real property." 20 Am.Jur.2d *Covenants, Conditions and Restrictions* § 1 (2008). Although our case law has typically discussed covenants which restrict a party's rights on the land, *see, e.g., Stevens v. Elk Run Homeowners' Ass'n, Inc.,* 2004 WY 63, 90 P.3d 1162 (Wyo.2004), covenants can be affirmative or negative in nature. 20 Am. Jur.2d *Covenants, Conditions and Restrictions* § 20 (1995). Covenants may also create easements. Such covenants are typically deemed to be appurtenant to and run with the land. 20 Am.Jur.2d *Covenants, Conditions and Restrictions* § 21 (1995).

■■■ [¶ 13] Express covenants are contractual in nature and are, therefore, interpreted in accordance with principles of contract law. *Stevens,* ¶¶ 12–13, 90 P.3d at 1165–66; *Goglio v. Star Valley Ranch Ass'n,* 2002 WY 94, ¶ 23, 48 P.3d 1072, 1081 (Wyo.2002); *Anderson v. Bommer,* 926 P.2d 959, 961 (Wyo.1996). Similarly, we interpret the language used in a plat in accordance with contract interpretation principles. *See, Sun-*

*shine,* ¶ 18, 173 P.3d at 403; *Owsley v. Robinson,* 2003 WY 33, ¶ 12, 65 P.3d 374, 377 (Wyo.2003). When the language is clear and unambiguous, the interpretation and construction of contracts is a matter of law for the courts. *Hasvold v. Park County School Dist. No. 6,* 2002 WY 65, ¶ 13, 45 P.3d 635, 638 (Wyo.2002). As with all contracts, our goal in interpreting covenants and plats is to determine and effectuate the intentions of the parties, especially the grantor. *Stevens,* ¶ 13, 90 P.3d at 1166; *Owsley,* ¶ 12, 65 P.3d at 377. In order to accomplish that goal, we consider the entire instrument rather than a single clause. *Anderson,* 926 P.2d at 961.

### 1. Partial Vacation of Plat and Amendment to Restrictive Covenants of the Skytel Country Estates Subdivision

[¶ 14] After the Brumbaughs' predecessor, Mr. Pascale, purchased his lots in the Skytel Country Estates subdivision, the original developer, Skytel, filed a partial vacation of plat and an amendment to the restrictive covenants. In order to resolve this case, we must determine what effect those filings had on the rights and obligations of the owners of the remaining Skytel Country Estates lots.

[¶ 15] The original declaration of restrictive covenants stated that it could be modified by "vote of the owners of at least two thirds of the land area within the Skytel Country Estates." There is no debate about the fact that, when the amendment to the restrictive covenants was filed, Skytel still owned at least two-thirds of the land within the Skytel Country Estates subdivision.

[¶ 16] The amendment to the restrictive covenants stated that the covenants were annulled and cancelled except as they pertained to the three lots which had already been sold. It also stated that the owners of Lots 77, 81 and 82 could choose to become part of the Cody's Country subdivision but, otherwise, would remain "subject to all of the terms and conditions of the restrictive covenants for Skytel Country Estates." The deed from Skytel to MLC specifically stated that it was subject to "patent reservations, rights of way and easements of record, building, use and zoning restrictions...."

[¶ 17] The partial vacation of the plat specified that the Skytel Country Estates subdivision plat was vacated except as to Lots 77, 81 and 82. Moreover, it provided that the vacation would "not abridge or destroy any of the rights and privileges of other proprietors in said plat." That statement was consistent with Wyo. Stat. Ann. § 34–12–108 (LexisNexis 2007), which states:

Any part of a plat may be vacated under the provisions, and subject to the conditions of this act provided, such vacating does not abridge or destroy any of the rights and privileges of other proprietors in said plat; and provided, further, that nothing contained in this section shall authorize the closing or obstruction of any public highways laid out according to law.

[¶ 18] Under the plain language of the amendment to the declaration of covenants, the vacation of the plat and § 34–12–108, the owners of Lots 77, 81 and 82 in the Skytel Country Estates subdivision continued to enjoy the rights and be bound by the obligations contained in the relevant subdivision documents. The amendment to the covenants and the vacation of the plat did not change those rights. Our focus in this case, therefore, must be on what rights were granted when the Skytel Country Estates subdivision was created.

### 2. The Brumbaughs' Rights Concerning the Skytel Country Estates Subdivision

[¶ 19] Paragraph 6 of the Skytel Country Estates subdivision covenants states, "All easements required for sewer, water[,] power and other utilities across said land either for lots in the subdivision or for access to and from the subdivision are hereby specifically reserved." The district court concluded that the covenant reserved the

right to such easements only to "the title owner which, at the time of their creation, was Flying L Skytel and is now currently the Mikelson Land Company" and those rights did not belong to individual lot owners, like the Brumbaughs. Considering the language of the entire declaration, we conclude, as a matter of law, that the district court's interpretation was mistaken.[1]

[¶ 20] Paragraph 6 clearly reserves easements for utilities and access, although it does not specify to whom the easements are reserved. Nevertheless, other sections of the declaration clearly indicate that the rights set forth in the covenants are for the benefit of the grantor and his successors. The declaration states that the covenants "shall be binding upon and inure to the benefit of the undersigned, its grantees, successors and assigns" and "[t]he general plans and restrictions contained herein inure to the benefit of the purchasers of all lots within said subdivision and the undersigned." When the entire declaration is considered, there is simply no question that the rights conveyed in Paragraph 6 were to inure to the benefit of the Skytel Country Estates lot owners. The Brumbaughs, as lot owners, have a right to easements for utilities and access.

[¶ 21] The declaration does not, however, define the location or scope of the easements. "An express easement not stating the location and dimensions is called a floating easement and is defined as an '[e]asement for right-of-way which, when created, is not limited to any specific area on servient tenement.'" *Edgcomb v. Lower Valley Power and Light, Inc.*, 922 P.2d 850, 855 (Wyo.1996), quoting *Black's Law Dictionary* 640 (6th ed.1990). *See also, RCR, Inc. v. Rainbow Canyon, Inc.*, 978 P.2d 581, 587–88 (Wyo.1999).[2] When a floating easement is

---

1. The district court ruled that the rights claimed by the Brumbaughs were barred by the statute of frauds because there was no deed or writing that provided the rights claimed. The statute of frauds, which is codified in Wyo. Stat. Ann. § 1–23–105 (LexisNexis 2007), "requires that every conveyance of real estate, or any interest therein, shall be in writing." *Fowler v. Fowler*, 933 P.2d 502, 504 (Wyo.1997). We do not agree that the statute of frauds is implicated because there are writings which govern this case—the declaration

of restrictive covenants and the subdivision plat. Instead, resolution of this case requires interpretation of those documents to determine whether they granted the claimed rights.

2. Floating easements are no longer allowed under Wyoming law. Wyo. Stat. Ann. § 34–1–141 (LexisNexis 2007) states:

(a) Except as provided in subsection (c) of this section, easements across land executed

created, "[t]he parties are presumed to have intended an easement that is reasonably convenient or necessary under the circumstances." *Edgcomb*, 922 P.2d at 855, quoting Jon W. Bruce and James W. Ely, Jr., *The Law of Easements and Licenses in Land* 7.02 (Rev. ed.1995). In order to locate the easement, the court must engage in a factual inquiry. *RCR*, 978 P.2d at 587–88. In *Edgcomb*, 922 P.2d at 855–56, we referred to the Bruce and Ely treatise and identified a number of factors for the court to consider in locating a floating easement. Because the ultimate goal is to determine the intention of the parties, the court first considers whether any oral or collateral written agreements were made by the parties. If no such agreement exists, then the court considers other factors, including the purpose of the easement, the geographic relationship between the dominant and the servient estates, the use of each of the estates, a comparison of the benefit to the dominant owner to the burden of the servient holder, and the actual use of the servient property by the dominant owner, if any. *Id. See also, RCR*, 978 P.2d at 587–88. On remand, the district court will have the responsibility of applying these principles to determine the location and scope of the Brumbaughs' easements.

[¶ 22] The Brumbaughs claim that the covenants allow them to place their entire septic system within the common area. While we agree that, as a matter of law, they are entitled to an easement for sewer purposes, we cannot say that they are necessarily entitled to place their entire septic system in the common area. Instead, it will be the district court's responsibility to conduct the appropriate factual analysis to determine a location, scope and dimension of the Brumbaughs' sewer easement that is "reasonably convenient or necessary under the circumstances."

[¶ 23] The Brumbaughs also claim that they are entitled to use all roads which have been developed in the original Skytel Country Estates subdivision, including Heidi Drive. Paragraph 6 of the covenants reserved access to and from the subdivision and the certificate of dedication on the Skytel Country Estates subdivision plat stated:

[a]ccess for the lots within the Skytel Country Estates is provided by a private road system linked to the Park County road system.

[¶ 24] Some roads are shown on the plat, although the precise access sought by the Brumbaughs, Heidi Drive, is not shown. Nevertheless, Heidi Drive apparently exists. It is not entirely clear from the record whether any of the roads shown on the plat have actually been developed and could be used by the Brumbaughs to access their property. R.A. Mikelson, the owner of MLC, stated in his affidavit that to his best information and belief, "none of the platted roads were ever constructed." In a supplemental affidavit, Mr. Mikelson explained: "The roads depicted in the plat wind their way between lots up and down the mountain with no concern for the steepness of hills and could not physically be built as shown on the plat."

[¶ 25] We conclude, as a matter of law, the Brumbaughs are entitled to access to their lot across the lands formerly within the Skytel Country Estates subdivision. Considering the plat, together with the cer-

---

and recorded after the effective date of this act which do not specifically describe the location of the easement are null and void and of no force and effect.

(b) Except as provided in subsection (c) of this section, agreements entered into after the effective date of this act which grant the right to locate an easement at a later date and which do not specifically describe the location of the easement are null and void.

(c) For purposes of this section an easement or agreement which does not specifically describe the location of the easement or which grants a right to locate an easement at a later date shall be valid for a period of one (1) year from the date of execution of the easement or agreement. If the specific description is not recorded within one (1) year then the easement or agreement shall be of no further force and effect.

(d) For purposes of this section the specific description required in an easement shall be sufficient to locate the easement and is not limited to a survey.

Section 34-1-141 does not, however, mandate that the floating easements in this case be declared null and void because the declaration was filed prior to adoption of the statute in 1981, and we held in *Edgcomb*, 922 P.2d at 859, the statute does not apply retroactively.

tificate of dedication and the restrictive covenants, we conclude that their right of access is not limited to the roads shown on the plat. Genuine issues of material fact, therefore, exist concerning the appropriate mode of access to the Brumbaughs' property. On remand, the district court will need to determine the status of the Heidi Drive access or whether other "reasonably convenient or necessary" access to the Brumbaughs' lot through subdivision property exists or may be developed.

[¶ 26] The Brumbaughs also claim that they are entitled to tap into a water system servicing the Cody's Country subdivision. They base this argument upon documents filed with various governmental agencies by the Skytel Country Estates developer, that indicated it intended to develop a water system for the subdivision, and documents indicating MLC has developed a water system to service some of the residents of the Cody's Country subdivision. These documents do not, however, determine the Brumbaughs' rights with regard to the water system. Instead, we must look to the Skytel Country Estates subdivision documents, the covenants and plat, to determine the Brumbaughs' rights. The plat makes no reference to providing water to the lots. As quoted above, Paragraph 6 of the covenants refers to easements for water and Paragraph 4 states that if water becomes scarce, meters will be installed. The express language of the covenants, including the references to water easements and the possibility of installing meters, does not expressly create an obligation for the developer to provide water nor does it convey a right to tap into any water system.

[¶ 27] The fact that there is no express grant of a right to connect to a water system distinguishes this case from cases where courts have recognized a right to use resources developed for adjacent lands. For example, in *Nordin v. May*, 188 F.2d 411 (8th Cir.1951), the court enforced a covenant expressly requiring the grantor to provide the grantee with steam power from a power system on adjacent property to operate a flooring plant on the conveyed property. Similarly, in *Slife v. Kundtz Properties, Inc.*,

40 Ohio App.2d 179, 318 N.E.2d 557 (1974), the court recognized a covenant expressly requiring the grantor who reserved natural gas rights in land to supply the grantee with gas for residential purposes. In contrast to the wording about water in the covenants in this case, the language used in *Nordin* and *Slife* expressly created the respective rights.

[¶ 28] Our rules of contract interpretation prohibit us from amending or modifying a contract under the guise of interpretation. *See, e.g., Goglio*, ¶ 27, 48 P.3d at 1082. If we were to interpret the covenants as requiring MLC to provide water to the Brumbaughs or allow them to connect to the Cody's Country subdivision water system, we would be violating that principle.

[¶ 29] The Brumbaughs also argue that the right to tap into the Cody's Country subdivision water system is implied by the easement language. It is true that "the general rule of law is that when a party grants a thing he grants, by implication, whatever is incident to it and necessary to its beneficial enjoyments." *Wallis v. Luman*, 625 P.2d 759, 767 (Wyo.1981), citing *Frank v. Hicks*, 4 Wyo. 502, 35 P. 475 (Wyo.1894). However, the right is limited by its terms to implication of things necessary to enjoyment of the granted rights. The right to connect to the Cody's Country subdivision water system is not implied in the express grants contained in the Skytel Country Estates subdivision covenants. The fact that the Brumbaughs may have a right to an easement for water and other utilities does not morph into a right to connect to the water system. Moreover, while the reference to water meters may suggest some type of communal water source, it would be improper for us to essentially add language to the covenant to create a right to connect to a water system that is not even mentioned in the subdivision documents.

[¶ 30] The Brumbaughs' proposed interpretation does more than imply those rights which are necessary to enjoyment of granted rights; it would create a new right (the right to connect to the Cody's Country subdivision water system) by implication. As we have recognized in the past, "implied

covenants are not favored in the law and will not be found to exist unless the language of the instrument leads unerringly to the conclusion that the parties [so] intended. . . ." *Kincheloe v. Milatzo,* 678 P.2d 855, 859 (Wyo.1984). The language of the Skytel Country Estates covenants does not lead unerringly to the conclusion that the Brumbaughs should be allowed to connect to the Cody's Country subdivision water system. Consequently, we rule, as a matter of law, the Brumbaughs are not entitled to that right.

■■■ [¶ 31] The Brumbaughs also claim a right to construct and use central livestock facilities in the common area of the original Skytel Country Estates subdivision. They base their claim upon the following language in Paragraph 3 of the covenants: "No livestock may be kept on the land but livestock may be kept in central facilities to be provided for the area at reasonable cost." The covenant is largely a prohibition against using lots within the subdivision to keep livestock. However, it also states that livestock may be kept in "central facilities to be provided for the area." These facilities were not identified on the plat and have never been constructed. The Brumbaughs argue that the central livestock facilities should be located in the common area of the original Skytel Country Estates subdivision. While the covenants indicate that they are generally to run with the land, Paragraph 3 does not state that the livestock facilities would be located on subdivision land. It states that central livestock facilities will be "provided for the area" as opposed to "in the common area" or "on subdivision lands." Unlike Paragraph 6 which specifically states that the easement burden applies to subdivision lands, Paragraph 3's reference to central livestock facilities to be "provided for the area" does not specifically burden subdivision land.[3]

[¶ 32] The express language of the covenant does not create an obligation for the developer to build such facilities,[4] does not indicate where the facilities would be located and, more importantly, does not state whether they would be located anywhere on subdivision property. Thus, as we pointed out in our discussion of the water issue, if we were to interpret the covenants as requiring construction of central livestock facilities on subdivision lands, we would be altering the covenants under the guise of interpretation. We rule, as a matter of law, the property formerly included in the common area of the Skytel Country Estates subdivision is not burdened by the requirement that central livestock facilities be placed upon it.

### 3. MLC's Rights in the Skytel Country Estates Subdivision

■■■ [¶ 33] The district court ruled that MLC is "entitled to vote on the modification of the covenants as it is the owner of more than two-thirds of the original land area within the Skytel Country Estates." The Brumbaughs challenge that ruling.

[¶ 34] The declaration of covenants states that the covenants "may be modified at any time by vote of the owners of at least two thirds of the land area within the Skytel Country Estates." Prior to the vacation of the plat, the owner of two-thirds of the land in the Skytel Country Estates subdivision had the authority to modify the covenants. In fact, that was the authority Skytel used when it canceled the covenants. The plat was vacated and the covenants were canceled

---

**3.** The record includes evidence indicating that Skytel and/or its principal owned other property in the area when the subdivision was created. (Vol.I, p. 69).

**4.** It is not entirely clear whether the Brumbaughs are arguing that MLC should build the facilities or simply provide a place to build them. We note, however, that even if the covenants or plats had established a location for the facilities, it would not have necessarily imposed the requirement that such improvement actually be constructed by the developer. *See, e.g., Majers v. Shining Mountains,* 219 Mont. 366, 711 P.2d

1375 (1986) (holding that the reference on a plat to road easements does not necessarily impose an obligation on the developer to construct the roads). However, many modern statutory provisions allow governmental authorities to mandate a developer construct certain improvements before it will approve a subdivision. *See, e.g., Scherpenseel v. Bitney,* 263 Mont. 68, 865 P.2d 1145 (1993). *See also,* Wyo. Stat. Ann. §§ 15–1–501, et. seq. (LexisNexis 2007) (land use planning in cities and towns) and §§ 18–5–101, et. seq. (LexisNexis 2007) (county land use planning).

in 1973, except insofar as they applied to the three lots which had been sold. The district court's ruling does not account for the fact that the Skytel Country Estates subdivision had been vacated when MLC took title to its property. Thus, MLC is not an owner of land in the Skytel Country Estates subdivision. We conclude that MLC does not have the right to modify the Skytel Country Estates subdivision covenants. That right belongs to two-thirds of the owners of land within the remaining part of the subdivision.

[¶ 35] The Brumbaughs also challenge the district court's approval of Mr. Legg's appointment of MLC as the architectural committee in 2004. Paragraph 5 of the declaration of covenants stated:

> All residences, buildings and sewerage systems must be approved before installation or construction by an architectural committee appointed annually by the undersigned to serve for one year.

[¶ 36] Mr. Legg, as president of Skytel, signed the declaration. We do not know whether Mr. Legg was still the president of Skytel when he appointed MLC as the architectural committee for Skytel Country Estates in June 2004; however, we do know that Mr. Legg signed the appointment document as an individual and not in his capacity as a representative of Skytel. Moreover, the record indicates that Mr. Legg is now deceased and the Skytel corporation has been administratively dissolved by the Wyoming Secretary of State, although we do not know when that took place.

[¶ 37] The Brumbaughs present a number of arguments challenging the district court's approval of the appointment, including questioning the authority of a developer, who did not own any interest in the subdivision, to appoint an entity, which does not own any interest in the subdivision, as architectural committee. Although we have serious questions about the Brumbaughs' stated concerns, we conclude that this issue may be resolved on narrower grounds.

[¶ 38] Under the plain language of the covenants, the developer corporation, Skytel, not its former president in his individual capacity, had the capacity to appoint an architectural committee. Moreover, under the plain language of the covenants, the appointment (whether otherwise correct or not) was only valid for one year. The Brumbaughs filed their declaratory judgment action in July 2005, after the one year appointment of MLC as architectural committee had already expired. Thus, the appointment was invalid at the time the complaint was filed for at least two reasons: Mr. Legg did not have the authority, as an individual, to make the appointment in June 2004; and the June 2004 appointment had already expired, as it was only valid for one year.

[¶ 39] We are not persuaded by MLC's argument that, if we hold the appointment invalid, it will create a "vacuum" of power to enforce the restrictive covenants. While it is true that our ruling will mean that an architectural committee no longer exists to pre-approve buildings, etc. within the subdivision, the power to enforce the covenants still belongs to the owners within the subdivision. We do not believe our ruling will frustrate the overall purposes of the covenants. We reverse the district court's ruling that the appointment was valid.

## CONCLUSION

[¶ 40] The Skytel Country Estates subdivision documents grant the Brumbaughs easements for power, sewer and access across lands originally in the Skytel Country Estates subdivision, and the district court erred by ruling as a matter of law that they did not have those rights. Because the location and scope of the easements were not set out in the written documents, they are floating easements and the district court will have to consider the relevant facts to determine a reasonable and convenient location and scope for those easements.

[¶ 41] The district court properly concluded that the covenants did not grant the Brumbaughs the right to connect to the water system developed by MLC or to central livestock facilities located in the common area of the original Skytel Country Estates subdivision. We, therefore, affirm those as-

pects of the district court's summary judgment order.

[¶ 42]   Finally, we conclude MLC does not have the authority to modify the Skytel Country Estates subdivision covenants and Mr. Legg's appointment of MLC as the architectural committee was not valid. Accordingly, we reverse those aspects of the district court's decision.

[¶ 43]   Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.