**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 21, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CASCO LLC, a Wyoming limited liability
company, d/b/a Quality Inn & Suites,

     Plaintiff - Appellant,

v.

MCDONALD'S REAL ESTATE
COMPANY, a Delaware corporation,

     Defendant - Appellee.

No. 15-8089
(D.C. No. 1:13-CV-00148-ABJ)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY, MATHESON**, and **McHUGH,** Circuit Judges.
_____

     This appeal concerns a contract and property dispute between neighbors. Casco, LLC and McDonald's Real Estate Company own adjacent real estate and dispute their purported rights and obligations under a Declaration of Reciprocal Easements, Covenants, and Restrictions that was part of a broader real estate transaction.

     We affirm the district court's ruling that Casco breached two provisions of the Declaration and does not have rights under those provisions. The district court erred, however, in ruling that Casco lost its property rights established in the Declaration.

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Exercising jurisdiction under 28 U.S.C. § 1291 in this diversity case, we affirm in part, reverse in part, and remand.

## I. BACKGROUND

### A. *Factual History*

#### 1. **The Declaration**

JB's Family Restaurants, Inc. owned Lots 4, 5, and 6 of an area of land in Casper, Wyoming called the Klassen Addition.  In 2002, JB's conveyed to Casco Lots 4 and 6 for $125,000, and JB's continued to own the adjoining Lot 5.  Casco has operated a Quality Inn & Suites on its lots.  As part of the transaction, the parties entered into the Declaration.

The Declaration, which Casco drafted and recorded in the Office of the County Clerk of Natrona County, Wyoming, on May 17, 2002, applied to Lots 4, 5, and 6.  It stated:

> 1. <u>New parking lot</u>. Casco, at its sole expense, shall install a new parking lot on real property owned by JB's prior to removing any of JB's existing 70 parking spaces.[1]  Casco will replace and build said parking spaces on JB's real property to accommodate at least sixteen (16) nine-foot (9') parking spaces.  After such new parking spaces have been installed upon JB's real property, JB's shall be responsible for the maintenance, repair, snow removal, sealing, and other expenses relative to maintaining the parking lots on JB's real property.

---

[1] The parties agree that, although the Declaration refers to "JB's existing 70 parking spaces," Casco owned thirteen of the 70 parking spaces after the parties executed the Declaration.  App. at 255, ¶ 13; App. at 367, ¶ 6.  When McDonald's purchased the property from JB's, it received 57 parking spaces.  App. at 367, ¶ 6.

2. Access easement. Attached hereto as Exhibits "A" and "B", and by reference made a part hereof, is the legal description of an access easement which JB's do hereby grant, bargain, sell, and convey to Casco across JB's property, which shall be a perpetual access easement until such time as the parties hereto, their successors and assigns, and predecessors in title mutually agree to terminate such access easement. The parties agree that the obligation for snow removal and maintenance and repair of such access easement shall be JB's.

3. Sign. JB's have granted to Casco the right to install, repair, and maintain signs on JB's real property located on the plat attached hereto as Exhibits "C" and "D", and by reference made a part hereof. Such signs shall not exceed the following dimensions:

   (a) Sign easement #1 shall not be in excess of 66" high, as measured from the ground to the top of the sign.

   (b) Total square footage of the two signs shall not exceed the lesser of 300 square feet, or 50% of the total dimensions and sign coverage allowed on Lot 5 by the City of Casper at the time the signs are to be erected.

4. Garbage receptacle. Casco, at its sole expense, shall install, to City's specifications, a garbage receptacle to be located upon JB's real property at the location described in the plat attached hereto as Exhibit "B", prior to removing JB's existing garbage receptacle.

5. Fences. The parties hereto agree that no fences will be constructed on or within 20' of the adjoining lot lines between Lots 4, 5, and 6 of the said Klassen Addition, the real property owned by JB's and Casco without the express written mutual consent of the parties hereto, their successors, or assigns. This restriction shall continue and shall constitute a covenant running with the real property owned by the respective parties hereto.

6. Parking Spaces. The parties hereto, their successors, assigns, and predecessors in title shall have the unrestricted right to use the parking spaces located upon the parties' real property legally described as Lots 4, 5, and 6, in the Replat of Klassen Addition, an Addition to the City of Casper, Natrona County, Wyoming. Each of the parties shall be responsible for the maintenance and repair of the parking spaces located upon its property, including the snow removal and the maintenance and repair. The parties hereto shall have the right to designate handicapped parking on their respective properties. All the parking spaces on the real property owned by

Casco and JB's shall constitute a conveyance of reciprocal easements for this purpose, and shall be a perpetual common easement which may be modified only with the mutual written consent of the parties hereto, their successors, assigns, and predecessors in title. Such parking spaces are set forth in the plat attached as Exhibit "E" hereto.

App. at 28-29.

When the parties signed the Declaration, JB's parking spaces and trash receptacle were located in the access easement discussed in the Access Easement Provision. The parties intended for (1) the new parking spaces, discussed in the New Parking Lot Provision, and (2) the future garbage receptacle, discussed in the Garbage Receptacle Provision, to be located outside the access easement. Attached to the Declaration were exhibits of maps showing the intended configurations of Lots 4, 5, and 6 after the Casco redevelopment. For unexplained reasons, Casco never redeveloped the property.

2. **McDonald's Redevelopment**

After purchasing JB's former property in 2013, McDonald's planned a redevelopment of its lot, Lot 5. Casco did not consent to McDonald's redevelopment. Instead, it communicated various objections, the specific nature of which the parties have not explained.

McDonald's nevertheless executed its redevelopment plan, making the following changes:

1. It demolished JB's restaurant and replaced it with a new McDonald's restaurant.

2. It removed the garbage receptacle on Lot 5 and built a new one in a different location on that same lot. This new location was not the location of the "proposed trash enclosure" depicted in the Declaration's exhibits.

- 4 -

3. It constructed a storage shed next to the new garbage receptacle.

4. Its replacement of the garbage receptacle and construction of a storage shed eliminated two parking spaces.

5. It installed a new sign, occupying 420.55 square feet out of 600 square feet allotted by the City of Casper.

McDonald's redevelopment does not interfere with the access easement. McDonald's has never denied a Casco employee or guest access to the access easement. Nor has Casco identified any employee or guest who has been unable to park on Lot 5. According to Casco, McDonald's placement of the garbage receptacle and storage shed diminishes the value of Casco's property by creating aesthetic blights, the nature of which Casco has not explained. Casco also states the redevelopment makes it impossible for large vehicles to park in the lot and has deprived it of two parking spaces.

3. **Casco's Proposed Redevelopment**

Following the redevelopment of McDonald's property, Casco sought to redevelop Lots 4, 5, and 6. Casco presented its plans to McDonald's. The parties have offered almost no detail on the nature of these plans. At minimum, however, the proposed redevelopment appears to involve (1) changing some aspect of the access easement on Casco's lots, (2) relocating McDonald's garbage receptacle in accordance with the Declaration's exhibits, and (3) installing a new sign on Lot 5.

McDonald's objected to Casco's proposed reconfiguration, contending the Declaration prohibits Casco from changing the access easement on its lot and from relocating the garbage receptacle on McDonald's lot. As to Casco's proposed sign,

Casco must apply for City approval to install the sign. To obtain City approval, it needs McDonald's, the owner of Lot 5, to sign its application, which McDonald's has refused to do. Casco asserts McDonald's conduct has "irreparably limited" the "future development" of Casco's lots without further specifying the nature of this harm.

## B. *Procedural History*

Casco sued McDonald's in the Wyoming state district court. McDonald's removed the case to federal court, invoking diversity jurisdiction under 28 U.S.C. § 1332.

### 1. Casco's First Amended Complaint

Casco's First Amended Complaint sought (a) declaratory relief, (b) specific performance or an injunction, and (c) damages.

#### a. *Declaratory relief*

Casco's First Amended Complaint sought a declaratory judgment stating:

a. The Declaration is valid, binding and enforceable against McDonald's;

b. Casco is entitled to utilize and/or develop the parking spaces as originally defined in the Declaration;

c. Casco is entitled to develop the trash receptacle and accompanying storage shed as originally defined in the Declaration;

d. Casco is entitled to ingress and egress over McDonald's property as defined in the Declaration;

e. Casco is entitled to utilize McDonald's property for at least two (2) signs not to exceed the lesser of 300 square feet or 50% of the total dimensions and sign coverage as permitted by the City of Casper; and

f. The actions of McDonald's, including, but not limited to, the development of the parking lot, relocation of the trash receptacle, installation of the storage shed, and use of excessive signage, have violated the express terms and conditions of the Declaration.

App. at 17 (emphasis removed and capitalization altered).

> b. *Breach of contract claim seeking specific performance and an alternative injunction*

Casco also alleged a breach of contract based on (1) McDonald's failure to "recognize Casco's right" under the Declaration to "modify the existing parking lot," "modify the location of the existing trash receptacle," or "utilize McDonald's property for at least two . . . signs not to exceed the lesser of 300 square feet or 50% of the total dimensions and sign coverage as permitted by the City of Casper," and (2) McDonald's use of "the entirety of the sign coverage" and its refusal to "reduce its signage to accommodate Casco's rights under the Declaration." App. at 18, ¶¶ 29, 30.[2]

As a remedy for this claim, Casco sought "specific performance of the Declaration as it relates to":

> (i) Casco's rights to reconfigure the parking area, (ii) relocate the trash receptacle, (iii) forcing McDonald's to be solely liable for the cost associated with the relocation of the storage shed, and (iv) forcing McDonald's to reduce its signage to accommodate Casco's rights under the Declaration.

*Id.* at 18, ¶ 33 (capitalization altered). In addition to specific performance, Casco sought a permanent injunction restraining McDonald's "from its current conduct and [from] frustrating the Declaration in order to prevent the suffrage [sic] of irreparable injury, loss, harm or damage." *Id.* at 19, ¶ 37.

---

[2] Casco further alleged, "The storage shed was not contemplated under the Declaration, making it more expensive for Casco to relocate the trash receptacle and the storage shed." App. at 18, ¶¶ 32 (capitalization altered). But it did not explain how this constituted a breach of contract.

c. *Damages in the alternative*

Finally, as an alternative to a declaratory judgment, specific performance, or permanent injunction, Casco sought compensatory damages for McDonald's alleged breach of contract.

2. **McDonald's Counterclaim**

McDonald's filed a counterclaim seeking a declaratory judgment that:

a. The Declaration is insufficiently definite to be enforced with respect to the rights Plaintiff seeks to enforce in its First Amended Complaint;

b. Casco has no right to alter the McDonald's parking lot;

c. Casco has no right under the Declaration to a particular number of parking spaces on McDonald's property nor does it have any right to parking designed to accommodate oversized vehicles;

d. Casco has no right under the Declaration to move the McDonald's trash receptacle or storage shed;

e. Paragraph 3 imposes no obligation on McDonald's, but rather grants Casco two sign easements that Casco may exercise so long as Casco's signs comply with paragraphs 3(a) and 3(b) of the Declaration and City of Casper ordinances or regulations;

f. Casco is in material breach of the Declaration as it did not perform its obligations under the Declaration in a timely way, and it violated paragraph 5 of the Declaration by construction of the fence, and accordingly it has lost any purported rights thereunder.

*Id.* at 48-49 (capitalization altered).

Alternatively, it alleged Casco "failed to perform its obligations under paragraphs 1 and 4 of the Declaration," discharging McDonald's "from any obligation arising under the Declaration." *Id.* at 49. McDonald's accordingly requested "that judgment be entered declaring that the Declaration has no further force or effect as a result of the lack

- 8 -

of performance by Casco of its obligations under the Declaration." *Id.* (capitalization altered).

### 3. **Grant of Summary Judgment**

McDonald's moved for summary judgment on Casco's claims. Casco cross-moved for summary judgment on its claims and McDonald's counterclaim. McDonald's argued the Declaration was indefinite and therefore unenforceable. The parties also disputed whether Casco breached the Declaration and, even if it did, whether it was therefore barred from enforcing its rights under it. The district court granted McDonald's motion and denied Casco's motion. It held (1) the Declaration was sufficiently definite and enforceable, and (2) Casco materially breached the Declaration, losing both its contractual and property rights under the Declaration.

## II. **DISCUSSION**

We review a grant of summary judgment de novo. *Osborne v. Baxter Healthcare Corp.*, 798 F.3d 1260, 1266 (10th Cir. 2015). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, we view the evidence in the light most favorable to the nonmoving party. *Osborne*, 798 F.3d at 1266. "Where, as here, we are presented with cross-motions for summary judgment, we must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *Fox v. Transam Leasing, Inc.*, 839 F.3d 1209, 1213 (10th Cir. 2016) (quotations omitted).

- 9 -

The parties do not dispute that Wyoming law applies. A federal court sitting in diversity is to "ascertain and apply the most recent statement of state law by the state's highest court." *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1263, 1280 (10th Cir. 2000) (quotations omitted). "[W]e are generally reticent to expand state law without clear guidance from its highest court." *Taylor v. Phelan*, 9 F.3d 882, 887 (10th Cir. 1993).

On appeal, Casco argues the district court erred in concluding it breached the Declaration and therefore lost its right to enforce it. We agree with the district court that Casco breached the New Parking Lot and Garbage Receptacle Provisions and can no longer enforce its rights, if any, under those provisions. But the district court erred in concluding Casco lost all its rights under the Declaration, including the property rights to use the easements established in the Access Easement, Sign, and Parking Spaces Provisions.

Our analysis divides the issues between the contract and the property disputes. We affirm in part, reverse in part, and remand to the district court.

### A. *Contractual Rights Under the Covenants*

The parties dispute their contractual rights and obligations under the Declaration. Below, we conclude (1) the Declaration is sufficiently definite and enforceable, (2) the New Parking Lot and Garbage Receptacle Provisions are contractual, and (3) Casco breached its contractual obligation under the New Parking Lot and Garbage Receptacle Provisions. We further hold Casco has no right to redevelop parking spaces or remove the garbage receptacle and storage shed.

1.  **The Declaration Is Enforceable**

On appeal, McDonald's argues the Declaration is unenforceable because it does not include a time period for performance. Thus, it argues, Casco cannot enforce any rights under the Declaration. Casco contends the Declaration is sufficiently definite and enforceable because it identifies the key terms of the agreement and intentionally excluded a time period for performance.

Under Wyoming contract law, "it is essential that the mutual assent of the parties to the terms of a contract must be sufficiently definite to enable the court to ascertain what they are." *Roussalis v. Wyo. Med. Ctr., Inc.*, 4 P.3d 209, 231 (Wyo. 2000) (quotations omitted). But "it is not necessary that each term be spelled out in minute detail." *Id.* (quotations omitted). Only "the essentials of the contract must have been agreed upon and be ascertainable." *Id.* (quotations omitted). This is because "[t]he law does not favor the destruction of contracts on the ground of indefiniteness, and if it be feasible the court will so construe the agreement so as to carry into effect the reasonable intention of the parties if that can be ascertained." *Id.* (quotations omitted).

To that end, where contracts are silent as to time period, Wyoming courts have supplied reasonable time frames and enforced the contracts. *See Baker v. Speaks*, 177 P.3d 803, 806 (Wyo. 2008) (holding if "no time for performance is specified in a contract, the law implies performance must be within a reasonable time" (quotations omitted)); *Reed v. Wadsworth*, 553 P.2d 1024, 1032 (Wyo. 1976) (rejecting the argument that a land contract was indefinite because "it was silent as to the time of possession" and

noting, "in the absence of a provision as to the time of performance, a reasonable time is implied").

We reject McDonald's argument that the Declaration is void based on the parties' failure to specify a time period in the New Parking Lot and Garbage Receptacle Provisions. Wyoming law directs courts to supply a reasonable time frame when the contract does not set one. The Declaration is sufficiently definitive and enforceable despite not having a specified time limit in the New Parking Lot and Garbage Receptacle Provisions. We will evaluate those provisions under a reasonable time frame.

2. **Contractual Provisions in the Declaration**

The parties refer to the promises made in the Declaration as covenants. Land use covenants are "promise[s] to do, or to refrain from doing, certain things with respect to real property." *Brumbaugh v. Mikelson Land Co.*, 185 P.3d 695, 701 (Wyo. 2008); *see also Wimer v. Cook*, 369 P.3d 210, 218 (Wyo. 2016) (stating covenants impose "restrictions or conditions on the use of land"). They are "enforceable in equity against all those who take the estate with notice of them." *Cash v. Granite Springs Retreat Ass'n, Inc.*, 248 P.3d 614, 619 (Wyo. 2011) (quotations omitted). Wyoming case law most often speaks of restrictive covenants, which are covenants that "restrict a party's rights on the land." *Brumbaugh*, 185 P.3d at 701. But the case law also recognizes covenants that can be "affirmative . . . in nature." *Id.* Unlike easements, which create property rights, *Seven Lakes Dev. Co. v. Maxson*, 144 P.3d 1239, 1245 (Wyo. 2006), land

- 12 -

use covenants create contractual rights that can be "enforced in equity," *Streets v. J M Land & Developing Co.*, 898 P.2d 377, 380 (Wyo. 1995).[3]

The Declaration contains six provisions. Three are land use covenants that create contractual rights and obligations; three created easements. The following are the land use covenants:

- the New Parking Lot Provision;

- the Garbage Receptacle Provision; and

- the Fence Provision, which is not at issue on appeal.

Below, we evaluate the parties' purported rights and obligations under the New Parking Lot and Garbage Receptacle Provisions.

3. **Casco Breached Its Contractual Obligations by Failing to Replace the Parking Spaces and the Garbage Receptacle**

Casco requests declaratory relief that it has a right to replace the parking lot and the garbage receptacle and that it can remove McDonald's storage shed. We hold Casco has no rights under the Declaration to alter the parking lot, dumpster, or storage shed.

a. *Legal background*

In interpreting the Declaration, our "goal is to determine and effectuate the intention of the parties." *Wimer*, 369 P.3d at 218 (quotations omitted). "Where an agreement is in writing and the language is clear and unambiguous, the parties' intent is

---

[3] *See also Wimer*, 369 P.3d at 218 (stating real property "[c]ovenants are contractual in nature and, therefore, we interpret them according to contract law principles"); *Brumbaugh*, 185 P.3d at 701 (same); *Streets*, 898 P.2d at 380 ("[A] contract theory of restrictive covenants, enforceable through the courts, makes sense in contemplation of modern land use.").

- 13 -

to be secured from the four corners of the contract." *Olsen v. Kilpatrick*, 161 P.3d 504, 508 (Wyo. 2007) (quotations omitted).

After we ascertain the terms of a contract, we can determine whether there was a breach. "The elements for a breach of contract claim consist of a lawfully enforceable contract, an unjustified failure to timely perform all or any part of what is promised therein, and entitlement of injured party to damages." *Reynolds v. Tice*, 595 P.2d 1318, 1323 (Wyo. 1979). The question here is whether Casco's failure to perform within 11 years was unreasonable. If "no time for performance is specified in a contract, the law implies performance must be within a reasonable time, and what is a reasonable time depends upon the circumstances of each case." *Baker*, 177 P.3d at 806 (quotations omitted). "What constitutes a reasonable time in any particular case is a question of fact." *G.C.I., Inc. v. Haught*, 7 P.3d 906, 909 (Wyo. 2000).

b. *Analysis*

The mandatory language ("shall") in the New Parking Lot and Garbage Receptacle Provisions established that Casco had an obligation to replace and install a parking lot and garbage receptacle. It breached those provisions by failing to perform over an 11-year period. It can no longer assert any purported rights under those provisions.

First, the New Parking Lot and Garbage Receptacle Provisions imposed obligations on Casco. The New Parking Lot Provision provided, "Casco, at its sole expense, shall install a new parking lot on real property owned by JB's prior to removing any of JB's existing 70 parking spaces." App. at 28. The Garbage Receptacle Provision

- 14 -

provided, "Casco, at its sole expense, shall install . . . a garbage receptacle . . . prior to removing JB's existing garbage receptacle." *Id.*

Casco argues it committed no breach because the two provisions created rights, not obligations. It argues that "the Declaration does not require Casco (a) to construct a new parking lot or (b) to relocate the existing garbage receptacle by a date certain." Aplt. Br. at 13. Instead, Casco contends, "the Declaration only provides that, before Casco may exercise a certain right, it must first complete a related task." *Id.* In other words, Casco reads the Declaration as giving it the option but not the duty to redevelop the lots. McDonald's, in contrast, argues the two provisions required Casco to both (1) install parking spaces and a garbage receptacle, and then (2) remove the existing ones. We agree with McDonald's.

The provisions provided, "Casco . . . shall install [a new parking lot or garbage receptacle] . . . prior to removing [the old parking lot or garbage receptacle.]" App. at 28. These provisions plainly expressed mandatory language temporally sequencing two obligations—"shall [1] install . . . prior to [2] removing." It includes no optional or conditional language giving Casco the right to remove old items if it installs new ones first. Rather, the contract required Casco to both "install" new items and then "remove" old ones.[4]

---

[4] When an ambiguity exists, Wyoming courts "look to parol evidence to understand the parties' intent," and "resor[t] to rules of construction." *Pennaco Energy, Inc. v. KD Co. LLC*, 363 P.3d 18, 26 (Wyo. 2015). The Declaration is unambiguous, but even if we looked to parol evidence and rules of construction, our conclusion would remain unchanged. First, Casco's president stated in his affidavit that "[i]n order to fully

Continued . . .

Second, Casco breached the New Parking Lot and Garbage Receptacle Provisions by failing to perform in 11 years. We agree with the district court that the 11-year delay was unreasonable based on the undisputed facts. By Casco's own admission, when the parties entered the Declaration, "JB's parking spaces and trash receptacle sat within the access easements. In order to fully utilize the access easements, Casco would be required to remove parking spaces and the trash receptacle." App. at 131 (capitalization altered). Eleven years later, Casco had failed to do so, compromising the utility of the access easement throughout that entire period.

Casco has failed to cite any record evidence justifying its failure to perform. *See Reynolds*, 595 P.2d at 1323 (stating a breach of contract occurs when there is "an unjustified failure to timely perform"). Casco instead attacks the district court's ruling by contending the contract creates rights but not obligations, an argument we rejected above. Casco's failure to present facts justifying the delay amounts to a failure to create a genuine dispute of material facts. Without any evidence justifying the 11-year delay, there is no genuine dispute of material fact that the delay was unreasonable. Put differently, a reasonable jury could not return a verdict for Casco based on the undisputed facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also G.C.I.*, 7 P.3d

utilize the granted access easements, Casco *would be required* to relocate JB's existing trash receptacle and remove some of []JB's existing . . . parking spaces." App. at 149, ¶ 15 (emphasis added and capitalization altered). Second, our interpretation follows the rule of construction that "any ambiguity . . . is construed against the drafter." *Collins v. Finnell*, 29 P.3d 93, 100 (Wyo. 2001). The drafter here was Casco, and if there were ambiguity in the two provisions, we would construe it against Casco and conclude the Declaration obligated it to redevelop the new parking lot and garbage receptacle.

at 909 (affirming a finding that a failure to repair a home, as required under a settlement agreement, within one year of entering that agreement was unreasonable). We therefore hold Casco breached the New Parking Lot and Garbage Receptacle Provisions.

Third, Casco can no longer assert any purported rights related to the parking lot and garbage receptacle. As stated, the New Parking Lot and Garbage Receptacle Provisions created obligations—not rights—for Casco to redevelop the lots. In a separate argument, Casco contends McDonald's breached the Declaration by reducing the number of parking spaces and limiting access to large vehicles, which was not "consistent with the development plan contemplated by the Declaration and depicted in detail by its incorporated exhibits." Aplt. Br. at 9. In other words, Casco attempts to derive contractual rights from the Declaration's exhibits that diagram the intended layout of the lots after Casco's redevelopment. McDonald's argues that the doctrine of laches prevents Casco from redeveloping the lots consistent with the Declaration's exhibits because Casco failed to assert its contractual rights for 11 years. We agree.

Under the equitable doctrine of laches, a party cannot assert a right when there was (1) an "unreasonabl[e] delay in asserting a legal right" and (2) "the delay has worked injustice, prejudice, or disadvantage to the defendant."[5] Casco has failed to present *facts*

---

[5] *Mullinnix LLC v. HKB Royalty Trust*, 126 P.3d 909, 923 (Wyo. 2006); *see also Windsor Energy Grp., LLC v. Noble Energy, Inc.*, 330 P.3d 285, 291 (Wyo. 2014) (stating the defense of laches is "available" in breach of contract actions); *Moncrief v. Sohio Petroleum Co.*, 775 P.2d 1021, 1022 (Wyo. 1989) (affirming state district court's grant of summary judgment based on laches); *Laches*, Black's Law Dictionary (10th ed. 2014) ("Unreasonable delay in pursuing a right or claim—almost always an equitable one—in a way that prejudices the party against whom relief is sought.").

justifying its failure to assert its purported contractual rights in an 11-year span. Further, it is undisputed that Casco's failure deprived McDonald's of the benefits contemplated in the New Parking Lot and Garbage Receptacle Provisions. In other words, Casco's unreasonable delay prejudiced McDonald's. We conclude the doctrine of laches bars Casco from asserting its contractual rights, if any, derived from the Declaration's exhibits.

In sum, Casco breached the New Parking Lot and Garbage Receptacle Provisions, and the doctrine of laches prevents it from asserting any contractual rights that remain under the Declaration and its exhibits. Because we have resolved the question at hand— whether Casco can redevelop the lots—we need not address whether Casco substantially breached the Declaration. Further, addressing the substantial breach question would not affect the status of Casco's property rights in the easement because, as explained below, (1) the Wyoming Supreme Court has not recognized breach of contract as a method to terminate easements, and (2) the Declaration states the access and parking easements are perpetual and cannot be terminated without the parties' mutual consent. Aplt. App. at 28-29.[6]

---

[6] McDonald's contends Casco's obligation to perform under the New Parking Lot and Garbage Receptacle Provisions was the consideration for JB's to enter into the Declaration and grant the easements. Thus, McDonald's argues, Casco's failure to perform under those provisions "resulted in the absence of consideration to JB's." Aplee. Br. at 7; *see also id.* at 12 (stating "JB's and McDonald's received no consideration at all" due to Casco's breach). We disagree with McDonald's for two reasons.

First, McDonald's does not mention that the Declaration was part of a broader real estate transaction in which Casco paid $125,000 to JB's. Casco's payment and promises to replace the parking lot and garbage receptacle were sufficient consideration to form the

Continued . . .

- 18 -

### B. *Property Rights in the Declaration*

Three provisions in the Declaration created easements: (1) the Access Easement Provision, (2) the Sign Provision, and (3) the Parking Spaces Provision. Casco contends it did not lose its easement rights because Wyoming law does not recognize breach of contract as terminating an easement. We agree.

### 1. **Legal Background**

An easement is an "interest in land [that] entitles the easement holder to a limited use or enjoyment over another person's property." *Seven Lakes Dev. Co.*, 144 P.3d at 1245. Easements have the potential to run with the land and last in perpetuity. *Brumbaugh*, 185 P.3d at 701 ("Covenants may also create easements. Such covenants are typically deemed to be appurtenant and run with the land."); Jon W. Bruce and James W. Ely, Jr., The Law of Easements and Licenses in Land § 10:1, Westlaw (database updated Sept. 2016) ("Easements frequently are created to endure forever."). Courts and treatises recognize a limited number of methods to terminate an easement.[7] The

---

contract and acquire the access and sign easements. Casco's later failure to perform breached the contract.

Second, to the extent McDonald's argument is that Casco's failure to perform was a substantial breach, we explain below that Wyoming courts have not recognized breach of contract as a method to terminate easements. We therefore decline to extend Wyoming law on this point.

Finally, we note that McDonald's could have enforced its contractual rights through a breach of contract claim for damages, but did not do so. Rather, it sought declaratory relief that Casco lost its rights under the Declaration.

[7] *See, e.g.*, *Stickney v. City of Saco*, 770 A.2d 592, 607 (Me. 2001) (citing 3 Richard R. Powell, The Law of Real Property ¶¶ 421-26 (1992)) ("An easement can be extinguished in five ways: (1) by expiration; (2) by an act of the dominant owner

Continued . . .

- 19 -

Wyoming Supreme Court has recognized at least the following termination methods:

(1) merger, *Davidson Land Co., LLC v. Davidson*, 247 P.3d 67, 75 (Wyo. 2011);

(2) misuse, *Stephens v. Lavitt*, 239 P.3d 634, 640 (Wyo. 2010); (3) adverse possession,

*Mueller v. Hoblyn*, 887 P.2d 500, 505 (Wyo. 1994); and (4) abandonment, *id.*; *Carney v.*

*Bd. of Cty. Comm'rs*, 757 P.2d 556, 562 (Wyo. 1988).

2.  **Analysis**

The district court erred in concluding Casco lost its property rights under the

Declaration.  The easement was not terminated through a method recognized by the

Wyoming Supreme Court.  Although we interpret an easement by applying principles of

contract construction, *Lozier v. Blattland Invs., LLC*, 100 P.3d 380, 384 (Wyo. 2004),

McDonald's has cited no case in which any court, let alone the Wyoming Supreme Court,

recognized breach of contract as a termination method.  Nor has McDonald's argued

---

(either by release or abandonment); (3) by the act of the servient owner (by prescription or conveyance to a bona fide purchaser without notice); (4) by conduct of both parties (merger or estoppel); or (5) by eminent domain, mortgage, foreclosure, or tax sale."); *Faulconer v. Williams*, 936 P.2d 999, 1002 (Or. Ct. App.  1997), *aff'd*, 327 Or. 381, 964 P.2d 246 (Or. 1998) ("An easement may be extinguished in several ways:  by consent, by prescription, by abandonment, by merger, or, if it is an easement by necessity, by the cessation of the necessity."); Romualdo P. Eclavea et al., 28A C.J.S. *Easements* §§ 142-68, Westlaw (database updated Dec. 2016) (recognizing the following termination methods:  merger, abandonment, adverse possession or use, alterations and obstructions inconsistent with easement, cessation of purpose, cessation of necessity, removal or destruction of servient estate, occurrence of or noncompliance with conditions, release, forfeiture for misuser, dedication or appropriation for public use, and estoppel); Mark S. Dennison, 53 Am. Jur. Proof of Facts 3d 519 § 5, Westlaw (database updated Dec. 2016) (listing the following termination methods:  abandonment, adverse possession, cessation of purpose, foreclosure, merger of properties, misuse, occurrence of a stated event, release, sale for taxes).

another termination method applies.  We therefore decline to render a novel application of Wyoming law without guidance from the Wyoming Supreme Court.  *Taylor*, 9 F.3d at 887 ("[W]e are generally reticent to expand state law without clear guidance from its highest court.").

In addition, the Declaration states the access and reciprocal parking easements are "perpetual" and cannot be modified or terminated without the parties' mutual consent. App. at 28-29.  This undermines McDonald's argument that a breach of contract can extinguish the easements.

We hold Casco maintains its rights to utilize the easements established in the Access Easement, Sign, and Parking Spaces Provisions of the Declaration.  Because the district court did not address the scope of the parties' property interests, we do not address the issue on appeal.  Instead, we hold Casco did not lose its rights under the easements in the Declaration and remand to the district court to address any remaining issues related to the easements.

## III. **CONCLUSION**

For the reasons stated, we affirm in part, reverse in part, and remand for further proceedings.  We (1) affirm the district court's ruling that Casco breached the New Parking Lot and Garbage Receptacle Provisions, (2) affirm the district court's ruling that Casco cannot alter the parking lot, storage shed, or garbage receptacle, (3) reverse the district court's ruling that Casco lost its property rights under the Declaration, and (4)

remand for the district court to address the sign easement and any other remaining issues related to the easements.

ENTERED FOR THE COURT,


Scott M. Matheson, Jr.
Circuit Judge
